**In re Francine GRECO, Debtor.**

**Bankruptcy No. 99–31544DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

March 23, 2000.

Kenneth William Richmond, Philadelphia, PA, for debtor.

Barry A. Solodky, Lancaster, PA, trustee.

John D. McLaughlin, Office of the Asst. U.S. Trustee, Philadelphia, PA, U.S. Trustee's Representative.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA, U.S. Trustee's Representative.

## MEMORANDUM OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

On March 13, 2000, Kenneth William Richmond, Esquire ("Counsel"), counsel for FRANCINE GRECO ("the Debtor") in the above-entitled individual Chapter 7 bankruptcy case, appealed this court's Order of March 9, 2000 ("the 3/9 Order"), which directed counsel to

file and serve an Application requesting permission to receive or retain the $2200 disclosed and any other compensation possibly received in connection with this case on or before March 15, 2000, or Counsel will not be permitted to receive

or retain compensation in excess of $500 in connection with this case.

The 3/9 Order also scheduled a hearing on March 16, 2000,

to determine Counsel's compliance with this and prior orders of this court, determine whether and what sanctions should be imposed upon Counsel, if he is found to have failed to comply with orders of this court, and to set a bar date for filing any further matters in this case, ...

Counsel appeared with a colleague on March 16, 2000, but did not file an application by March 15, 2000, to retain the $2200 previously disclosed as received, as required by the 3/9 Order. In the course of a colloquy at that hearing, we allowed Counsel until March 20, 2000, to file a brief explaining his reasons for refusing to file the application as directed by the 3/9 Order.

This Memorandum Opinion is filed pursuant to Local Bankruptcy Rule ("L.B.R.") 8001-1(b) in support of the 3/9 Order, in light of Counsel's reasons for failing to comply with the 3/9 Order, as expressed in his brief. It is accompanied by an order giving Counsel one more opportunity to file the necessary application before imposing sanctions on him.

The instant case was commenced by Counsel's filing of an individual voluntary Chapter 7 bankruptcy petition on behalf of the Debtor on September 13, 1999. No filings were made by any interested party challenging the Debtor's claim that all of her property was exempt as of the November 25, 1999, deadline for filing same, nor were there any challenges to her discharge or the dischargeability of any debts filed as of December 24, 1999, the bar date for such filings. The Chapter 7 Trustee, Barry A. Solodky, Esquire ("the Trustee"), therefore filed a report that no assets were available for administration on October 25, 1999.

The only other events occurring in this case were that, on November 18, 1999, and December 6, 1999, the Debtor filed agreements seeking to reaffirm debts owed to Sears, Roebuck and Co. ("Sears") and Citibank (South Dakota), N.A. ("Citibank"), respectively. It is this court's practice to schedule discharge hearings in all cases in which reaffirmation agreements are filed. At these hearings a colloquy is conducted with the debtor and the debtor's counsel, who are required to attend, at which other interested parties, particularly the creditor seeking reaffirmation, are noticed and entitled to appear, in order to determine whether the reaffirmation agreement should be approved.

The discharge hearing in this case was scheduled on December 16, 1999, and was attended by the Debtor and Counsel. The Sears agreement sought reaffirmation of an unsecured debt in the amount of $232.74. We note that no reference to this indebtedness was included in from the Debtor's Schedules. *See, e.g., In re Katz,* 203 B.R. 227, 235 (Bankr.E.D.Pa.1996), *aff'd,* C.A. No. 97-550 (E.D.Pa. Sept. 10, 1997) ("A Debtor has a duty to list *all* known potential obligations on the Schedules.") (emphasis added).

Citibank was owed $479.71, although this obligation was also not listed on the Debtor's Schedules. This indebtedness was also unsecured and the only "benefit" which the Debtor apparently sought to obtain from either reaffirmation was that Sears and Citibank would continue to advance credit to the Debtor. Believing that the Debtor, a practicing chiropractor, could easily obtain alternative sources of credit, and was in effect agreeing to pay over $700 merely to obtain sources of credit obtainable for free, we refused to approve these agreements. *See* M. Culhane & M. White, *Debt After Discharge: An Empirical Study of Reaffirmation,* 73 AM. BANKR.L.J. 709, 730-31, 748-51 (1999) (explaining why such reaffirmations should not be approved and noting the tactics of Sears in seeking such agreements).

The case then appeared ready for closing. However, the Trustee stated in his no-asset report that the Debtor had indicated that she had paid in excess of $500

compensation to Counsel for his services. This indication was consistent with certain recitations in the papers filed with the Debtor's Schedules by Counsel. Specifically, while counsel stated that he had received no compensation for his services from any source on the Statement required by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2016(b), he attached thereto a document entitled "Disclosure of Compensation of Bankruptcy Petition Preparer," which referenced fees charged pursuant to 11 U.S.C. § 110(h) by a "bankruptcy petition preparer." Such a form is to be completed by a "person, *other than* an attorney," 11 U.S.C. § 110(a)(1) (emphasis added) who prepares a bankruptcy document for filing. However, on this form, Counsel recited that he had received $1000 from Dr. Raymond Wisdow, the Debtor's spouse ("Wisdow"), for research regarding the effect of the bankruptcy on the Debtor's student loans.

As a result of the Trustee's statement and the recitations on the above-referenced form, personnel of the Bankruptcy Court Clerk's office logically concluded that Counsel had received in excess of $500 for representation of the Debtor, but had not filed a fee application as required by F.R.B.P. 2002(a)(6), L.B.R.2016–1(b), and either L.B.R. 2016–2 (although apparently inapplicable because greater than $750 was received) or L.R.B.2016–3. As a result, the Clerk's office sent out two form orders, attached as Exhibits "B" and "C," respectively, to Counsel's brief, dated January 7, 2000, and January 10, 2000, requiring Counsel to file a fee application within 20 days in order that the case could be closed. We note that the January 7 order is the form utilized by this court, while the January 10 form is a slightly different form used by the other judges of this court. The latter form was therefore apparently dispatched in error, although its effect was simply to reiterate the necessity of filing a fee application.

On January 17, 2000, Counsel sent an unsolicited letter to the court, attached hereto as Exhibit "D" to his brief, stating, apparently inconsistently with any disclosures to date, that Counsel had received $2200 from Wisdow to review his and the Debtor's financial affairs prior to the Debtor's bankruptcy filing. Counsel also filed, apparently inconsistently with the foregoing, a so-called Application for Compensation stating that the Debtor paid no compensation to Counsel for his services.

Having reviewed the above Application and Counsel's statement in his January 17, 2000, letter, it appeared to us that Counsel had concluded that he need not file a fee application disclosing or seeking approval of his fee because it had allegedly been paid by Wisdow, not the Debtor. We therefore entered an Order of February 15, 2000 ("the 2/15 Order"), which is a form utilized by us only, to elicit a necessary fee application. This Order, attached as Exhibit "E" to Counsel's brief, accorded Counsel with an additional time to file the necessary application, but barred Counsel from receiving more than $500 compensation if no application were filed and further scheduled a hearing to determine what action we would take if Counsel ignored these filing deadlines. This time-tested form avoids the necessity of our filing multiple orders in a quest for a fee application necessary to close a case. We might also note that we had never in the past received any complaint regarding the format of this form order.

Nevertheless, the 2/15 Order elicited additional unsolicited and, in this case, vituperative correspondence from Counsel, attached to his brief as Exhibit "F." Our response to this letter, on February 18, 2000, is attached thereto as Exhibit "G."

Counsel, without explanation to the court, failed to appear at the hearing scheduled on March 9, 2000, pursuant to the 2/15 Order. This prompted the Order of March 9, 2000, which is the subject of appeal.

The statutory bases for our conclusion that counsel who receives compensation in

excess of $500 from third parties as well as debtors themselves must obtain court approval of their fees through the fee application process are 11 U.S.C. § 329 and F.R.B.P. 2016 and 2017. The relevant Code section reads as follows:

§ 329. **Debtor's transactions with attorneys.**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

The pertinent provisions of the Rules, F.R.B.P. 2016 and 2017(a), read as follows:

Rule 2016. **Compensation for Services Rendered and Reimbursement of Expenses.**

(a) **Application for Compensation or Reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expenses and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, . . . Unless the case is a chapter 9 municipality case, the applicant shall transit to the United States trustee a copy of the application.

(b) **Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . .

Rule 2017 **Examination of Debtor's Transactions with Debtor's Attorney.**

(a) **Payment or Transfer to Attorney Before Order for Relief.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive. . . .

Collier describes § 329 as "an example of the bankruptcy court's traditional concern for the need to scrutinize carefully the compensation paid to the debtor's attorney." 3 COLLIER ON BANKRUPTCY, ¶ 329.01, at 329–3 (15th ed. rev.1999). This text then goes on to reiterate the requirement that compensation payable by third parties as well as by debtors them-

selves is subject to review by bankruptcy courts at ¶ 329.02[1][b], at 329–6; and ¶ 329.03[1], at 329–8, as follows:

> The court may review the compensation paid to the debtor's attorney regardless of the source of the compensation, i.e., whether such compensation is paid by the debtor or a nondebtor third party (footnote omitted)....

> .  .  .  .  .

> ... Under Section 329(a) and Bankruptcy Rule 2016(b), the statement must include the source of such compensation, even if the source is not the debtor but a third party entity....

■ Although Collier notes that the test for whether a payment is made "in contemplation of bankruptcy" is a subjective one, *id.*, ¶ 329.03[1][d], at 329–10 to 329–11, the quoted phrase is interpreted broadly, as is thusly noted at *id.*, ¶ 329.03[1][e], at 329–11:

> Services devoted to the prevention of bankruptcy, such as to effect a settlement or to determine the continued viability of a company, may also be subject to the provisions of section 329 once a bankruptcy case is commenced (footnote omitted).

The pre-petition period contemplated in 11 U.S.C. § 329(a)(1) is one year prior to the filing.

■ The apparent payment of $2200 by Wisdow to Counsel two months before the bankruptcy filing is well within the time-period referenced in § 329(a). Research regarding the effect of a bankruptcy filing on the Debtor's student loans clearly appears to constitute services "in contemplation of bankruptcy."

■ The court is obliged to ascertain the reasonableness of the compensation paid for debtors by third parties, *see id.*, ¶ 329.04[i][1][a], at 329–16 to 329–17; and 9 COLLIER ON BANKRUPTCY, ¶ 2017.11, at 2017–9 to 2017–10, and in fact has the duty to do so, even if no party objects. *See In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 840–45 (3d Cir. 1994). It appears to us that this duty can be fulfilled only if the court is able to review a fee application which describes sufficient information for the court to examine all of the relevant factors. *See id.,* ¶ 2016.09[1], at 2016–10 to 2016–11.

■ If counsel refuses to provide the requisite disclosures, *id.,* ¶ 2016.1, at 2016.3 to 2016–4, or charges payments which the court fails to find are reasonable, *id.,* ¶ 329.04[2], at 329–22 to 329–23, compensation received may be disallowed totally or in part. The excess payment received can be ordered to be repaid to the debtor's estate, if it is property of the estate, and, if it is not property of the estate, to the third-party or the payor, pursuant to 11 U.S.C. §§ 329(b)(1), (2). Also "[c]ourts have the discretion and authority to disallow fees totally for violation of disclosure rules, and, at least in theory, to suspend or disbar the offending professional...." 9 COLLIER, *supra,* ¶ 2016.20, at 2016–26.

■ In the past, we have indicated that $750 is at the high range of the market rate for representation of a debtor in a no-asset Chapter 7 case such as this case. *See In re Patronek,* 121 B.R. 728, 734–35 (Bankr.E.D.Pa.1990). *Cf.* L.B.R. 2016 (establishes $750 as the maximum figure amount that counsel for a Chapter 7 debtor can receive and is allowed to utilize a short form for a fee application). Thus, a charge of $2200 or even $1000 demands some level of investigation by this court.

The principle that fee applications must be filed when Counsel receives over $500 from a third party payor is supported, without dissent, by the numerous cases cited in the 3/9 Order itself and the 2/18 Letter to Counsel, as well as by other authority. *See, e.g., In re Prudhomme,* 43 F.3d 1000, 1004 (5th Cir.1995) ("any payment to debtor's attorney, regardless of the source, is reviewable by the bankruptcy court"); and *In re Walters,* 868 F.2d 665, 668 (4th Cir.1989) ("We are of opinion

that any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment.").

■ In his brief Counsel makes four arguments in his efforts to contest the propriety of the 3/9 Order. The first is an attempt to justify his absence from the March 9, 2000, hearing because an "appropriate application" was filed on February 17, 2000, which it will be recalled stated that no compensation was paid to Counsel. However, we disagree, because an "appropriate application" would have disclosed and supported the basis for the charges attributable to services performed in this case on behalf of the Debtor which had been paid by Wisdow.

The second argument challenges the jurisdiction of this bankruptcy court to inquire into funds paid by Wisdow, since they were allegedly not subject to repayment to him by the Debtor. This argument appears to be based on Counsel's contention that the payment by Wisdow were not property of the Debtor's estate and therefore were beyond our power of inquiry.

■ We disagree for two reasons. First, it seems to us that an alleged payment by a nondebtor spouse living with a debtor on behalf of the debtor is a payment from a source too close to the debtor to be considered to have been received from a separate entity. This is especially true when both spouses are, as here, doctors who presumably pool their funds, at least to some extent. Although the Schedules list no entireties property, possibly in the mistaken belief that same is not property of the Debtor's estate, *but see, e.g., In re Garner,* 952 F.2d 232, 233–34 (8th Cir. 1991); *In re Ward,* 837 F.2d 124, 125–26 (3d Cir.1988); *Napotnik v. Equibank,* 679 F.2d 316, 318 (3d Cir.1982); at *In re De-Mary,* 1988 WL 87730 (Bankr.E.D.Pa. Aug. 12, 1988), we suspect that at least some of the couple's property is owned by

the entireties. At the very least, we believe that same would be deemed "marital property" under Pennsylvania law, *see* 23 P.S. § 3501(a), in which both would have an interest were they to separate or divorce. Thus, a payment from Wisdow is, in essence, a payment from the Debtor. Any other perspective would make it too easy for a debtor's counsel to avoid court scrutiny of fees paid by manipulation of funds between a debtor and a nondebtor payor.

In support of this argument, Counsel cites *In re Harmon,* 118 B.R. 68, 69 (Bankr.E.D.Mich.1990), for the principle that this court has no "jurisdiction" over Wisdow's income and expenses. In fact, *Harmon* makes no statements whatsoever regarding a bankruptcy court's jurisdiction, but merely articulates a decidedly minority viewpoint that a nondebtor spouse's income and expenses need not be considered in a disposable income calculation in a Chapter 13 case. *But see In re Rothman,* 204 B.R. 143, 159–60 (Bankr. E.D.Pa.1996), citing numerous cases which, in addition to that decision, reject the reasoning of *Harmon.* We note that a spouse's income is highly relevant in certain matters arising in Chapter 7 cases, *e.g.,* a § 523(a)(15) calculation, *In re Koons,* 206 B.R. 768, 773 (Bankr.E.D.Pa. 1997), or a determination of undue hardship under § 523(a)(8)(B). *See In re Cabanel,* Bankr.No. 98–34212DAS, Adv. No. 99–38 (Bankr.E.D.Pa. June 10, 1999) (earnings of wife considered in comparing debtor's financial picture to that of the debtor in *In re Faish,* 72 F.3d 298 (3d Cir.1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996)). In this regard, we note that the Debtor recently filed a proceeding to determine dischargeability of a student loan debt, which is listed for a trial on May 4, 2000.

■ Secondly, as 11 U.S.C. § 329(b)(2) makes quite clear, assuming *arguendo* that the payments to Counsel were from a third party at arms length from the Debtor, unlike her husband, and

the payments could not be deemed property of her estate, this court is nevertheless empowered to review the compensation arrangements of the Debtor with Counsel. Specifically, § 329(b)(2) permits the court to review arrangements with counsel which do not involve property of the Debtor's estate and to order excessive compensation repaid to the third party payor.

In making this argument, Counsel cited *In re Trinsey*, 121 B.R. 462, 466–68 (Bankr.E.D.Pa.1990), *rev'd,* 143 B.R. 355 (E.D.Pa.1992), which discusses the significance of whether payments to counsel were "property of the estate" in that decision. However, *Trinsey* involved an action by a Chapter 7 trustee seeking to recover property of the estate from counsel. In that context, the determination of whether the sums paid were property of the debtor's estate was critical to the cause of action. However, for purposes of the court's performance of its duties under § 329 to independently review compensation received by the debtor's counsel, the point is not critical. Again, if the compensation paid by the third party is deemed excessive, § 329(b)(2) empowers the bankruptcy court to order counsel to make a refund to the third party payor.

■■■ The third argument asserted is that this court cannot compel Counsel to disclose to it legal services performed by Counsel exclusively for Wisdow. In this regard, Counsel appears to contend that such disclosures could violate the attorney-client privilege between Wisdow and him.

At the outset, it should be noted that we have not requested any disclosure of services provided *solely* to Wisdow. We are concerned only with disclosure of services performed on behalf of the Debtor, and the charges for same. Of course, we cannot allow evasion of disclosure of services which were actually on behalf of the Debtor by a mere statement that all or most services were performed for Wisdow and not the Debtor. After all, it is the Debtor on whose behalf bankruptcy papers were prepared and court appearances were made.

It would seem to us that very few entries on fee applications are likely to compromise the attorney-client privilege by disclosing confidences damaging to clients. To the extent that this might occur, as the Assistant United States Attorney suggested at the March 16, 2000, hearing, the entries which would disclose confidential information could be redacted or phrased in general terms.

■■■ Fee application responsibilities cannot be avoided by vague unsupported claims of privilege. On the other hand, excruciating detail is not needed for many entries. All that is necessary to provide are entries disclosing such items as the time to prepare Schedules, attend the creditor's meeting, and make public appearances in court. Counsel's concerns in this case, stated as they are in the abstract, do not appear to create any excuse for his complete refusal to submit any fee applications indicating the services performed to justify the sum, apparently between $1000 and $2200, paid to Counsel for services in connection with the Debtor's bankruptcy.

The final argument offered by Counsel reiterates, again, contrary to the plain wording of § 329(b)(2), the argument that this court lacks power to order Counsel to disgorge payments which are not property of the Debtor's estate. Section 329(b)(2), once again, expressly states that a bankruptcy court can order excessive payments returned to the entity that made the payment, *i.e.*, Wisdow. Therefore, we again reject this argument.

Having thus carefully reviewed all of Counsel's arguments contending that our orders were in any way inappropriate, and rejecting them all, we cannot discern any reason why Counsel should persist in refusing to comply with the spirit and letter of these orders. Therefore, unless our hand is stayed by the district court in light of the outstanding appeal from the 3/9

Order, which, since that order was not any sort of a final disposition, is clearly interlocutory, *see* 28 U.S.C. § 158(a) and F.R.B.P. 8003, we are committed to enforcing that and our other orders. In doing so, we will accord Counsel an additional period to comply, noting that he apparently felt strongly about the matter. However, we cannot allow our established procedures to be flaunted just because Counsel mistakenly feels unfairly aggrieved thereby.

## ORDER

AND NOW, this 23rd day of March, 2000, upon noting that counsel for the Debtor, Kenneth William Richmond, Esquire ("Counsel"), has not complied with the directive in our Order of March 9, 2000, requiring him to file and serve an application requesting permission to receive or retain the sum between $1000 and $2200 previously referenced and any other compensation possibly received in connection with this case on or before March 15, 2000, and upon consideration of his brief arguing that he need not comply therewith, it is hereby ORDERED as follows:

1. Counsel is directed once again to file and serve an application requesting permission to receive or retain the sum between $1000 and $2200 disclosed and any other compensation possibly received in connection with this case, but is now granted an extension to do so on or before March 31, 2000, or Counsel will not be permitted to receive or retain compensation in excess of $500 in connection with this case.

2. A hearing is scheduled at the following time, date, and place, which counsel *must* attend, upon penalty of monetary sanctions and/or suspension from practice in this court, to determine Counsel's compliance with this and prior orders of this court, determine whether and what sanctions should be imposed upon Counsel, if he is found to have failed to comply with orders of this court, on

THURSDAY, APRIL 6, 2000, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.