**In re Edwin C. MAYEAUX, Debtor.**

**No. 99–61936.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 10, 2001.

---

Lisa Lambert, Trial Attorney, Office of United States Attorney, Tyler, TX, for United States Trustee.

Edwin E. Buckner, Jr., Marshall, TX, for debtor.

## MEMORANDUM OF DECISION

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court upon hearing of the Motion to Examine Transactions with Debtor's Attorney, filed by the Office of the United States Trustee in the above-referenced Chapter 13 case, which seeks to determine whether 11 U.S.C. § 329(a) imposed a duty upon the Debtor's attorney, Edwin E. Buckner, Jr. (the "Debtor's counsel") to disclose all fees which had been paid to him by the Debtor, Edwin C. Mayeaux (the "Debtor"), immediately prior to, and also subsequent to, the commencement of the above-referenced Chapter 13 case. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

---

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334(b) and

618

### Background

On or about August 2, 1999, attorney Edwin Buckner, Jr. was contacted by Edwin C. Mayeaux regarding possible legal representation concerning improprieties allegedly committed by Mr. Mayeaux arising from his role as a financial and investment advisor to a Ms. Dottie Rush. As a lawyer involved in a general civil and criminal practice, though with a significant involvement in bankruptcy cases, the Debtor's counsel accepted this engagement and then, according to his testimony, he became immediately engaged in multiple-hour conferences with the Debtor on numerous successive dates, during which he provided advice and counseling services to the Debtor, as well as engaging in a review and reproduction of a massive amount of documents related to Ms. Rush's business interests, the return of which had already been demanded by Ms. Rush.[2]

Following repeated demands by Ms. Rush's attorney for the return of the documents and despite the Debtor's altruistic hopes of resolving the dispute without litigation, within a month of Debtor's counsel's retention, Ms. Rush had filed a petition against the Debtor in state district court in Gregg County and she obtained the entry of a temporary restraining order against the Debtor. Debtor's counsel filed and served an answer to Rush's original petition and a hearing to consider the entry of a temporary injunction was scheduled for September 10, 1999, though it was delayed one week to September 17. Thereafter, Debtor's counsel informed the Debtor that the civil litigation costs in his estimation would exceed $50,000.00, with a greater amount to be required in the event of a criminal indictment. According to Debtor's counsel, the Debtor subsequently decided to avoid trial of the state court lawsuit because of the expense and potential damage to his reputation, and instead gave instructions to seek the protection of this Court prior to the temporary injunction hearing. A voluntary petition for relief under Chapter 13 of the Bankruptcy Code was executed by the Debtor on September 10 and filed on September 14, 1999.[3]

As required by Fed. R. Bankr.P.2016, Debtor's counsel filed a "Rule 2016(b)—Statement of Attorney Compensation" in which he represented that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor in contemplation or in connection with the bankruptcy case is as follows ...

28 U.S.C. § 157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O). The Court notes that the underlying Chapter 13 case has been dismissed, with the Court specifically retaining jurisdiction "to entertain and to determine all requests for relief, whether raised sua sponte or by any party in interest, pertaining to the actions or omissions of, or the compensation to be paid to, the Debtor's counsel in this case, and to enter any order pertaining thereto which may be appropriate under the circumstances," pursuant to the authority recognized in *Querner v. Querner (In re Querner)*, 7 F.3d 1199 (5th Cir.1993)

2. Debtor's counsel testified that he needed the Debtor's assistance in reviewing the disputed transactions which included complex stock purchases and intricate profit-sharing agreements.

3. Debtor's counsel testified that he subsequently attended the temporary injunction hearing in Gregg County on September 17 only to deliver a plea in abatement based upon the bankruptcy filing. This is the only attorney service which Debtor's counsel even remotely concedes might be construed to have been taken in contemplation of the bankruptcy case.

For legal services, I have agreed to accept $2,160.00
Prior to the filing of this statement, I have received $ 0.00
Balance Due $2,160.00

The statement also included the following representation:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including

> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

> b. Preparation and filing of any petition, schedules, statement of affairs, and plan which may be required;

> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

> d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;

> e. Other provisions:

> Debtor has agreed to pay the balance of attorney's fees and court costs through the plan as specified therein. Debtor has agreed to pay to his attorney $125.00 per hour plus expenses for legal services provided in any adversary, contested, stay, valuation, tax, and/or other litigation in this case and in other Court (sic).

Though not disclosed in his original nor in his amended Rule 2016(b) statement,[4] Debtor's counsel actually received the sum of $7,000.00 from the Debtor prior to the filing of the bankruptcy petition.[5] These transfers were first revealed during a cross-examination of the Debtor during a hearing to consider dismissal or conversion of the Debtor's case.[6] The Debtor later testified at the dismissal hearing that he had paid an additional $3,000.00 to Debtor's counsel since the filing of the bankruptcy.[7] That post-petition payment had also never been disclosed by Debtor's counsel. Debtor's counsel now claims that he was not required to disclose any of those payments to him in his Rule 2016(b) statement because those sums were not

---

**4.** Filed among the Debtor's amended schedules on August 15, 2000 was an amended Rule 2016(b) statement by Debtor's counsel in which he stated that he was owed *and was paid* the sum of $2,000.00 for bankruptcy services, excluding representation in litigation involving dischargeability, judicial lien avoidance, the automatic stay or any other type of adversary. However the truthfulness of that amended statement is highly dubious since the Debtor's original Chapter 13 plan filed in September, 1999, and his First Amended Plan proposed on April 7, 2000, provided for the payment through the Debtor's plan of the $2,000.00 fee for bankruptcy services to which Debtor's counsel would have been entitled without the filing of a formal fee application pursuant to the Local Rules of Bankruptcy Procedure. See Loc. R. Bankr.P. 2016(e). That proposed payment scheme for bankruptcy services was not changed until the Debtor filed a Second Amended Plan on August 15, 2000.

**5.** Debtor's counsel testified that this $7,000 sum was paid in three installments of $2,500.00 on August 4, 1999, another $2,500.00 in mid-August, and a final $2,000.00 in early September, 1999.

**6.** The Court must note that not only were these payments omitted from the Rule 2016(b) Statement of the Debtor's counsel, but these transfers made within six weeks of the filing of the case were not disclosed in any manner in the Debtor's original schedules and statement of financial affairs filed on September 14, 1999, nor in any of the amendments thereto filed on December 10, 1999, and August 15, 2000.

**7.** The accounting filed by the Debtor's counsel pursuant to his agreement with the United States Trustee reveals that he received a payment of $1,000.00 on April 17, 2000, and a $2,000.00 payment on May 5, 2000.

paid in connection with the bankruptcy case.

Subsequent to the filing of the present motion, Debtor's counsel agreed to some of the demands of the United States Trustee and has now provided an accounting of the previously undisclosed sum of $3,000.00 paid to him in the post-petition period.[8] Debtor's counsel has also filed an amended fee application containing all of the pre-petition services, to be considered only in the event that the Court grants the present motion. Notwithstanding such agreements, Debtor's counsel maintains that he never engaged in any discussion with the Debtor about bankruptcy options until immediately prior to the actual filing and vociferously argues that "[t]his Court, the United States trustee, and the Chapter 13 trustee do not have authority and/or the right to monitor, comment upon, and examine attorney's fees charged, paid and earned outside of this Court." [9]

### Discussion

There are few things which a bankruptcy court finds as distasteful as its duty to examine transactions between an attorney and a bankruptcy debtor or to evaluate the reasonableness and necessity of attorney's fees. But the fulfillment of that duty is also one of the most integral parts of the bankruptcy system. As explained by the United States Bankruptcy Court for the Eastern District of Pennsylvania:

> One of the surest means for the bankruptcy system to come under public disrepute is for the perception to take hold that it allows attorneys to milk the last cent out of debtors while leaving creditors nothing. Also disturbing is the prospect that attorneys may be able to extract a premium from debtors who are desperate to file in order to save an asset that is on the brink of being lost. These concerns, among others, have led Congress and the Courts to enact and enforce strict regulations on the payment of attorney's fees in bankruptcy. One of the cornerstones of the regulatory structure is the necessity for attorneys to fully and honestly disclose their transactions with clients. This disclosure requirement is embodied in 11 U.S.C. § 329(a) and implemented through Bankruptcy Rule 2016(b).

*In re Levin,* 1998 WL 732878, *2 (Bankr. E.D.Pa., Oct. 15, 1998).

▆▆▆ 11 U.S.C. § 329(a) [10] and Fed. R. Bankr.P. 2016(b) [11] require a complete disclosure to creditors of the amounts paid to

---

8. Debtor's counsel also has agreed to deposit the post-petition payments into an IOLTA or other attorney trust account pending the resolution of these disputes.

9. See "Response of Debtor's Attorney to Motion to Examine Transactions of United States Trustee (sic)" at p. 2.

10. § 329(a) states that

 Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the

petition, for services rendered or to be rendered *in contemplation of or in connection with* the case by such attorney, and the source of such compensation. (emphasis added).

11. Rule 2016(b) provides that

 Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

a debtor's attorney within one year of the filing of a bankruptcy case *in contemplation of ... OR .... in connection with ...* the bankruptcy case. (emphasis added). If a compensation payment is subject to disclosure under either test, § 329(b) of the Bankruptcy Code [12] and Fed. R. Bankr.P. 2017 [13] authorize the Court to act upon that disclosure by determining whether such payments were excessive and by ordering the return of all or any part of such payments. These disclosure and enforcement provisions are "designed to prevent bankruptcy attorneys from extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings." *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994). "Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors." *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (10th Cir. BAP

1997). "Thus, Congress provided not only for extensive Court, trustee, and creditor scrutiny of the compensation to be paid to attorneys and professionals in general, but also for broad discretion in imposing sanctions for violations of these strictures." *Schroeder v. Rouse (In re Redding)*, 263 B.R. 874, 878 (8th Cir. BAP 2001) (citations omitted). "Taken together, § 329 and Rule 2017 furnish the court with express power to review payments to attorneys for excessiveness and to restore the status quo when assets have improvidently been bartered for legal services." *In re Campbell*, 259 B.R. 615, 626 (Bankr. N.D.Ohio 2001), *citing In re Martin*, 817 F.2d 175, 180 (1st Cir.1987).

This process of review is absolutely dependent upon full, complete and absolute compliance with the disclosure requirements by a debtor's attorney.[14] *Arens v. Boughton*, 176 B.R. 781 (W.D.La. 1993), *aff'd*, 43 F.3d 1000 (5th Cir.1995) ["It is the duty of debtor's counsel to aid this review by providing the bankruptcy court with all information necessary to make an adequate review of the relevant transaction."]. When an attorney unilaterally elects to conceal the existence of pay-

---

**12.** § 329(b) declares that:
 (b) If such compensation [paid to a debtor's attorney] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
 (1) the estate, if the property transferred—
 (A) would have been property of the estate; or
 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
 (2) the entity that made such payment.

**13.** Rule 2017 implements § 329(b) by providing that:
 On motion by any party in interest or on the court's own initiative, the court after notice

and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

**14.** These provisions apply to every attorney employed by a debtor, regardless of the purpose for which the attorney is retained, and notwithstanding the fact that an attorney will not be seeking formal employment by, nor compensation from, the bankruptcy estate. 9 COLLIER ON BANKRUPTCY ¶ 2016.16 at p. 2016–23 (15th ed. rev.2001).

ments that might otherwise be subjected to examination by creditors and the court, the entire compensation review process is derailed and public confidence in the system is damaged. "Accordingly, a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." *In re Downs,* 103 F.3d 472, 477 (6th Cir.1996), *quoting In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986).

It has now been disclosed, by independent means and through no effort of the Debtor's counsel, that the Debtor's counsel was paid $7,000.00 by the Debtor in the month prior to the filing of the bankruptcy case and that the Debtor's counsel received an additional $3,000.00 approximately seven to eight months after the filing of the bankruptcy petition. The Debtor's counsel asserts in his own defense that no disclosure was made because none was required. The United States Trustee vigorously challenges that proposition. The Court has thus been called upon to determine if the amounts paid to the Debtor's attorney in this case were in contemplation of or in connection with the Debtor's bankruptcy case such as would subject the Debtor's attorney to the duty of disclosure under § 329 and Rule 2016(b).

Section 329(a) is written in the disjunctive and most courts have interpreted the operative phrase—"in contemplation of or in connection with"—as incorporating two different concepts and have applied differ-

ent standards under each sub-phrase. *In re Keller Fin. Serv. of Fla., Inc.,* 248 B.R. 859, 877 (Bankr.M.D.Fla.2000), *citing In re Rheuban,* 121 B.R. 368 (Bankr.C.D.Cal. 1990), *rev'd in part on other grounds,* 124 B.R. 301 (C.D.Cal.1990), *on remand,* 128 B.R. 551 (Bankr.C.D.Cal.1991).

*Payments Made "In Contemplation Of" Bankruptcy.*

■ A fee payment is made "in contemplation of" a bankruptcy case if the underlying professional services were rendered at a time when the debtor was contemplating bankruptcy. This subjective test is based upon the state of mind of the debtor, "i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding." *Wootton v. Ravkind (In re Dixon),* 143 B.R. 671, 675, n. 3 (Bankr.N.D.Tex.1992).

■ In this case, the Debtor's counsel states that there was no contemplation of bankruptcy by the Debtor until September 9, 1999. Yet the Court is required to probe more than the oral declarations of the debtor and/or his lawyer in order to determine the Debtor's state of mind. Because the origin of this subjective test is rooted in § 60(d) of the superseded Bankruptcy Act,[15] the observations of the Supreme Court of the United States as to what payments were made "in contemplation of" bankruptcy under § 60(d) are insightful as to this current dispute:

> As to the jurisdiction to re-examine [whether fees were paid in contemplation of bankruptcy], the controlling question is with respect to the state of

---

**15.** Section 60(d) of the Bankruptcy Act provided that:

(d) If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admi-

ralty for services to be rendered, the transaction shall be reexamined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.

mind of the debtor and *whether the thought of bankruptcy was the impelling cause of the transaction* .... If the payment or transfer was thus motivated, it may be reexamined and its reasonableness be determined.

... But it is insisted, in the instant case, that the payment to appellants could not properly be regarded as made in contemplation of bankruptcy, and hence within the jurisdiction to re-examine, because the payment was for the purpose of engaging appellants to conduct negotiations with creditors in order to arrange for an extension of time, and if necessary, for the operation of the business under the creditors' supervision, and thus to avoid a forced liquidation and ultimately to restore the business to a sound basis. We find no ground for saying that the fact that such purposes were in view establishes, as matter of law, that the payment was not in contemplation of bankruptcy. *On the contrary, negotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of the payment. "A man is usually very much in contemplation of a result which he employs counsel to avoid."*

*Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472, 476–78, 53 S.Ct. 703, 705, 77 L.Ed. 1327 (1933) (citations omitted and emphasis added). This broad interpretation has been maintained and utilized by courts in consideration of whether payments were made "in contemplation of" bankruptcy under § 329(a) of the Bankruptcy Code. *Brown v. Luker (In re Zepecki),* 258 B.R. 719, 724 (8th Cir. BAP 2001); *Keller Fin. Serv.,* 248 B.R. at 878, *In re GIC Government Securities, Inc.,* 92 B.R. 525, 529 (Bankr.M.D.Fla.1988); *see also, In re Greco,* 246 B.R. 226, 231 (Bankr.E.D.Pa.2000) ["Services devoted to the prevention of bankruptcy, such as to effect a settlement or to determine the

continued viability of a company, may also be subject to the provisions of section 329 once a bankruptcy case is commenced."]; 3 COLLIER ON BANKRUPTCY ¶ 329.03[1][d] at p. 329–11 (15th ed. rev., 2001) ["Thus, the payment of fees on the eve of bankruptcy, related to the attorneys' action to obtain a moratorium from the state on certain obligations of the debtor to make refunds to investors, has been held to have been made in contemplation of bankruptcy and reviewable by the court."].

*Payments Made "In Connection With" Bankruptcy.*

 In consideration of whether the legal services rendered by the Debtor's counsel were "in connection with" the bankruptcy case, a more objective standard applies. If it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case, then such services are deemed to have been rendered in connection with the bankruptcy case and the attorney has a duty to disclose any compensation received or to be received for such services. *Keller Fin. Serv.,* 248 B.R. at 879; *see also Cohn v. U.S. Trustee (In re Ostas),* 158 B.R. 312, 321 (N.D.N.Y.1993) ["The phrase ("in connection with") may include services related to precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy."]

In this federal circuit, the scope of § 329(a) is governed by the decision in *Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000 (5th Cir.1995). In *Prudhomme,* the Fifth Circuit considered whether services were made "in contemplation of or in connection with" a case such that an ordered disgorgement of a pre-petition retainer was justified. Though it did not acknowledge the disjunctive nature of the two tests, the Fifth Circuit looked to more

objective factors to determine that a disclosure of compensation paid to the debtor's attorneys in that case was statutorily mandated under § 329(a), notwithstanding the fact that the first installment of the fees was paid over a year and a half prior to the bankruptcy filing and that the debtors' principal attorney vehemently asserted otherwise as to the subjective intent of himself and his clients.[16] Those relevant factors included: (1) the financial condition of the debtors upon their first consultation with the attorneys; (2) the fact that the debtors were seeking the attorney representation to resolve their disputes with their largest creditor; and (3) the fact that the debtors were unsuccessful in resolving such disputes in a non-bankruptcy context, thus leading to the bankruptcy filing. *Id.* at 1004. On the basis of those objective factors, the *Prudhomme* court concluded that the attorneys' failure to disclose the payments received for the pre-petition services justified disgorgement of the fees. *Id.*

■ On the basis of the testimony presented, the Court finds that the services provided by the Debtor's counsel prior to and during this case were rendered both "in contemplation of" and "in connection with" the Debtor's bankruptcy case and concludes that such counsel was therefore required to disclose all of the fee payments which he received from the Debtor. Counsel's first consultation with the Debtor occurred less than six weeks prior to the filing of the bankruptcy case. Debtor's counsel admitted upon examination by

the United States Trustee that, from the time of that initial consultation with the Debtor, the Debtor was retaining his services with the expressed hope of avoiding the litigation of the claims asserted by Ms. Rush. As the Debtor consistently rebuffed the repeated demands of Ms. Rush and her attorney for the return of the critical records, that hope quickly evaporated. There is every indication that the Debtor knew the gravity of his financial situation from the initiation of the attorney-client relationship. Although no direct evidence of the Debtor's state of mind was elicited at this particular hearing with reference to the purpose of his attorney fee payments to his counsel, the Debtor testified at the earlier dismissal hearing that the $7,000.00 fee payment which he made to his counsel in the pre-petition period was "for whatever he did" and he acknowledged that the post-petition payment could not possibly have related to the state court civil suit due to the existence of the automatic stay.[17] The Debtor's counsel further acknowledged in the present hearing that the Debtor "knew his way around this [bankruptcy] court" as a result of the fact that, as revealed in the voluntary petition in the present case, the Debtor had previously been a bankruptcy debtor in a case before this Court in 1989. There is no dispute that the claims asserted by Ms. Rush were certainly the most dominant financial demands being asserted against the Debtor from the initiation of the representation

---

**16.** The principal lawyer in *Prudhomme* testified in a rather emphatic fashion that the fees could not have been paid in contemplation of or in connection with a bankruptcy filing because he had advised the debtors that ...
"You [the debtors] will always lose everything you have if you go into a bankruptcy ... That's tantamount to saying I'm not going to file a bankruptcy for you. You are not hiring me to do a bankruptcy.... [I]f

you want a bankruptcy, that's like having a funeral. Go hire somebody else to do it."
*In re Prudhomme*, 152 B.R. 91, 100 (Bankr. W.D.La.1993), *aff'd sub nom. Arens v. Boughton*, 176 B.R. 781 (W.D.La.1993), *aff'd*, 43 F.3d 1000 (5th Cir.1995).

**17.** Tape 3 of August 8, 2000 dismissal hearing at 550–553.

and that most of the efforts by the Debtor's counsel in the pre-petition period pertained to an accelerated effort to ascertain and react to the Debtor's civil liability exposure to Ms. Rush. Those efforts included services rendered in direct response to Ms. Rush's lawyers, including services seeking to forestall the filing of the state court action, services pertaining to the examination of the financial status of parties to whom the Debtor had loaned on an unsecured basis substantial sums from Ms. Rush's accounts, and actions taken in direct response to the eventual initiation of civil litigation by Ms. Rush. Ultimately, on the eve of the first major action to be taken by Ms. Rush in her lawsuit against the Debtor, the Debtor filed his bankruptcy petition. That is why the Debtor's counsel honestly conceded at the hearing that "primarily Chapter 13 was based on her [Rush's] claims." Thus, under the totality of the circumstances existing at the initiation of this bankruptcy case and in light of the broad interpretation which has historically been applied under § 329(a), this Court concludes that the payments made by the Debtor in the pre-petition period were made "in contemplation of or in connection with" this bankruptcy case which imposed upon the Debtor's attorney a duty to disclose the existence of these payments.

This duty to disclose the existence of these payments was not erased by the fact that the Debtor's counsel was also capable of rendering criminal law advice to the Debtor. Even assuming that the services rendered by Debtor's counsel encompassed some aspects of criminal law, it is clearly evident that the Debtor, from the date of his first consultation with the Debtor's counsel, contemplated imminent civil law repercussions arising from the allegations of mismanagement and misappropriation asserted by Ms. Rush. The fact that the Debtor may have had a fear of criminal prosecution arising from the same set of operative facts as gave rise to his civil exposure and the ultimate filing of this bankruptcy case, and the fact that he may have asked questions regarding his exposure in that regard, does not provide the Debtor's counsel a means by which to escape from his obligations to disclose the existence of these compensation payments under § 329(a). *Stringer v. Mitchell (In re Stein),* 261 B.R. 680 (Bankr.D.Or.2001) [pre-petition agreement with debtor's criminal counsel was subject to disclosure and review under § 329]; *Dixon,* 143 B.R. at 676, n. 3 and at 677 [finding that a fee arrangement with and the payment of a retainer to a criminal defense attorney was within the scope of § 329, even though the attorney did not represent the debtor in the bankruptcy case and notwithstanding the fact that the debtor was a target of several major criminal investigations and had legitimate concerns of a seizure of assets under the RICO statutes].

There is little doubt that, notwithstanding the protestations of counsel to the contrary, the services being rendered by Debtor's counsel in the six-week pre-petition period directly related to the precipitating cause of the bankruptcy filing and directly had an impact on the bankruptcy case.[18] Thus, the disclosure of all compensation paid to Debtor's counsel prior to the filing of the bankruptcy case was required under the appropriate provisions of the Bankruptcy Code and Rules.

---

**18.** In fact, Debtor's counsel hotly protested the characterization of the Rush civil litigation by the U.S. Trustee as unsuccessfully concluded, insisting that such civil claim is "actually still pending"—a recognition that the dispute existed throughout the existence of the Debtor's unsuccessful bankruptcy and is subject to revival in state court today due to the dismissal of the Debtor's bankruptcy case.

■ The duty of the Debtor's counsel to disclose the $3,000.00 in post-petition payments he received from the Debtor is even more apparent and the breach of that duty by an experienced bankruptcy practitioner, especially when combined with counsel's apparent intention to appropriate that money without making application to the Court, is inexcusable.

First of all, the money paid to the Debtor's counsel in the post-petition period constitutes estate property. It is elementary bankruptcy law that all post-petition earnings of a Chapter 13 debtor and all property which a Chapter 13 debtor acquires in the post-petition period constitutes property of the bankruptcy estate.[19] Thus, even without any reference to § 329(a) and Rule 2016(b), a Chapter 13 debtor, in possession of estate property under § 1306(b), has no authority to transfer estate property to an attorney without proper notice and opportunity for hearing under § 363(b)(1), since such a transfer could not be properly characterized as a transfer in the ordinary course of business and any attorney in receipt of such an improper transfer has a duty to disclose its existence to the estate's creditors and to the Court.

Secondly, the receipt of these post-petition funds by Debtor's counsel clearly falls within the requirements of § 329(a) and triggers the counsel's duty to amend his Rule 2016(b) statement. There is simply no credible evidence nor argument for the proposition that this compensation, paid

seven or eight months after the commencement of the Debtor's bankruptcy, pertained to services which were not "in contemplation of or in connection with" the bankruptcy case. Indeed, all of the objective evidence reveals that the services rendered by the Debtor's counsel during that time period were directly related to the bankruptcy case and the contested matters occurring within it.

■ Finally, Debtor's counsel is charged with the knowledge that, subject to a singular exception under the Local Rules of Bankruptcy Procedure which recognizes a presumptively reasonable fee for a debtor's attorney in a Chapter 13 case, compensation may only be paid from bankruptcy estate property to a debtor's attorney in a Chapter 13 case upon judicial approval of a formal fee application, with proper notice to all parties in interest.[20] That requirement is absolute, notwithstanding any agreement to the contrary which might have been negotiated between the Debtor and Debtor's counsel. Such a rule is necessary to protect the rights of creditors and to assist the Court in its duty to examine the reasonableness of any fees paid in conjunction with a bankruptcy case. *See, e.g., In re Anderson,* 253 B.R. 14, 20 (Bankr.E.D.Mich.2000) [concluding that an attorney's post-petition collection of fees from a chapter 13 debtor without court approval violates the Bankruptcy Code and Rules, *citing In re Courtois,* 222

---

**19.** See 11 U.S.C. § 1306(a)(1) and (2).

**20.** 11 U.S.C. §§ 330(a)(4)(B) and 331 and Fed. R. Bankr.P. 2016(a). However, Local Rule of Bankruptcy Procedure 2016(e)(1) excuses a debtor's attorney in a Chapter 13 case from having to file a formal application if the request for pre-petition and post-petition services and expenses incurred prior to confirmation is $2,000.00 or less, with parties in interest retaining the right to object to any proposed sum. If the sum is greater than

$2,000.00, a formal fee application with proper notice is required. Loc. R. Bankr.P. 2016(e)(2). Even ignoring the $7,000.00 in pre-petition payments which he received, the Debtor's counsel would have still improperly received, in the absence of the revelations about the postpetition payments, the sum of $5,000.00 [the $3,000.00 already received and the $2,000.00 to be received upon confirmation] without submitting any type of fee application to the Court.

B.R. 491, 495 (Bankr.D.Md.1998); *In re Fricker*, 131 B.R. 932, 941 (Bankr.E.D.Pa. 1991) and *In re Pair*, 77 B.R. 976 (Bankr. N.D.Ga.1987)]. Thus, the failure of the Debtor's counsel to disclose in a timely manner (i.e., in a time period preceding the accidental disclosure of such payments by his client in open court) the existence of the post-petition compensation paid to him, and his failure to allow creditor review or to seek judicial approval of the compensation paid to him, constitute a serious breach of the obligations imposed upon him by the Bankruptcy Code and Rules.

 As stated earlier, the duty to comply with the provisions of § 329 and Bankruptcy Rule 2016 is one of the most serious and significant obligations imposed upon attorneys practicing in the bankruptcy system. "[T]he policy requiring timely disclosure of ... matters under § 329 and Rule 2016(b) is central to the integrity of the bankruptcy process and are not to be taken lightly nor easily dismissed...." *In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C.1996). As recognized in a recent opinion of the United States Bankruptcy Court for the Northern District of Ohio:

> Compliance with § 329 and Rule 2016 is crucial to the administration and disposition of cases before the bankruptcy courts. Compliance is mandatory. Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient.

*In re Campbell*, 259 B.R. 615, 626–27 (Bankr.N.D.Ohio 2001)(quotations and citations omitted). *See also, Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881 (9th Cir.1995), *cert. denied*, 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996) ["Debtor's counsel [must] lay bare all its dealings ... regarding compensation.... Negli-

gent or inadvertent omissions do not vitiate the failure to disclose."]; *Miller v. U.S. Trustee (In re Independent Engineering Co., Inc.)*, 232 B.R. 529, 532 (1st Cir. BAP), *aff'd*, 197 F.3d 13 (1st Cir.1999) ["Merely attaching a fee agreement that appears to provide for unmonitored post-petition payments by the Debtor does not satisfy the disclosure requirements."]. The duty is placed wholly upon the debtor's attorney to provide an absolute and complete disclosure of all payments received and that attorney assumes all of the risks arising from any miscalculation or omission. Thus, it is imperative that every doubt in the mind of a debtor's attorney regarding the scope of § 329(a) must be construed in favor of disclosure and such an attorney must thereafter be diligent in supplementing any previous disclosure regarding compensation payments so that the statutory right of creditors and the statutory duty of the Court to conduct a fee examination might be effectively protected.

The Debtor's counsel in this case; however, implicitly advocates a far different system—a unilateral system in which the attorney stands as the sole arbiter of whether disclosure and examination of compensation payments is required or appropriate, with the attorney retaining the right to present himself as the innocent victim of mistake or inadvertence if the existence of payments is ultimately revealed. Under this system, disclosure is required only if the payment information "leaks" from another source. One simply conceals the existence of any fee payment until such time, if ever, as it is subsequently discovered, at which time the attorney simply falls back upon the subjective defense that he did not believe that disclosure was necessary and that he cannot therefore be legitimately subjected to sanctions since he had no subjective intent to violate the Code and the Rules. It is a

standard which encourages attorneys to conceal the existence of compensation payments made by their clients regardless of their true nature. It is a standard which prevents effective review of compensation payments as contemplated by Congress. It is a standard which subjects the bankruptcy process to serious abuse. It is a standard which can neither be endorsed nor tolerated, regardless of whether the debtor's bankruptcy objectives have been achieved. As recognized in *In re Woodward*, 229 B.R. 468, 474–75 (Bankr. N.D.Okla.1999):

> Were the Court to require less than full disclosure, the purpose behind § 329(a) would be defeated. Counsel could avoid disclosure of any or all of the fees paid to them by making a covert decision that the undisclosed fee was so unrelated to the bankruptcy case that its disclosure was not required, and eliminating the possibility of Court review in the process. The Court's ability to make a meaningful review of attorney's fees would be hindered, if not destroyed. Such a result can be neither condoned nor allowed.

■ The honest and comprehensive disclosure of compensation payments plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce these disclosure provisions in an aggressive manner, even when the underlying case has been subsequently dismissed. Bankruptcy jurisprudence is replete with references to the power, authority and duty of the bankruptcy court to police the disclosure and reporting requirements of the Bankruptcy Code and Rules with its sanction powers, including its power to order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case. *See, e.g., In re Downs*, 103 F.3d 472, 477 (6th Cir.1996);

*In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *Anderson v. Anderson, (In re Anderson)*, 936 F.2d 199, 204 (5th Cir. 1991). However, appropriate notice and opportunity for hearing must be given to any party who may be subjected to the imposition of sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56–57, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27 (1991); *Saldana v. Kmart Corp.*, 260 F.3d 228, 236 (3d Cir.2001); *Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir.2001); *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir.1995).

Thus, the Court concludes that the United States Trustee's Motion to Examine Transactions with Debtor's Attorney must be granted and the Court shall conduct a hearing on Tuesday, December 4, 2001 at 10:30 a.m. in the Courtroom of the United States Bankruptcy Court, 200 East Ferguson Street, First Floor, in Tyler, Texas, regarding the "First Amended Application of Debtor's Counsel for Attorney's Fees." Further, because of his various violations of the duties imposed upon him by the Bankruptcy Code and Rules with regard to the disclosure and payment of professional compensation, including the egregious breach of his obligation to disclose the existence of and to account for the post-petition compensation paid to him by the Debtor, the Court will also conduct a hearing on Tuesday, December 4, 2001 at 10:30 a.m. in the Courtroom of the United States Bankruptcy Court, 200 East Ferguson Street, First Floor, in Tyler, Texas, for Edwin E. Buckner, Jr. to show cause as to why sanctions should not be imposed upon him for violations of the duties imposed upon him by the Bankruptcy Code and Rules with regard to the disclosure and payment of professional compensation. If any party in interest desires to file an objection to the "First Amended Application of Debtor's Counsel for Attorney's

Fees" or wishes to submit to the Court a written memorandum of argument and authorities regarding the imposition and appropriateness of sanctions in this case, such objection or written memorandum shall be filed on or before Tuesday, November 27, 2001.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law [21] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr.P. 7052 and 9014. Appropriate orders shall be entered which are consistent with this opinion.

---

21. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.