United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-40462
_____

ROBERT E. BARRON,

Plaintiff-Appellee,

versus

JANNA L. COUNTRYMAN,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

Before JONES, WIENER, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Robert Barron, a bankruptcy attorney, appeals the judgment of the bankruptcy and district courts ordering him to disgorge fees taken both pre- and postpetition from clients who utilized his services in one hundred sixty-seven Chapter 13 bankruptcies. The courts erred in construing Barron's retainer agreements to require escrow of the prepetition "deposits" earned for prepetition services. Neither Texas professional ethics standards nor applicable Bankruptcy Code provisions and court rules support the courts' results. We do, however, affirm the order to disgorge postpetition fees for which no court approval was sought.

Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the bankruptcy court to reassess sanctions.

## I.   BACKGROUND

This is a consolidated appeal arising from a series of motions filed in one hundred sixty-seven bankruptcy cases commenced between 2001 and 2003 in which Barron charged his clients pre- and postpetition fees.  Barron is a bankruptcy attorney with a high-volume practice in the Eastern District of Texas.  Under Rule 2016(e)(1) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Texas ("Local Bankruptcy Rules"), an attorney has been permitted to charge a total fee of up to two thousand dollars for a Chapter 13 bankruptcy without filing a detailed fee application.  Barron's standard practice in Chapter 13 was to charge clients a total fee of two thousand dollars or less, but he did this in an unorthodox manner.[1]

First, Barron would require payment from clients, generally about four hundred dollars, before he filed bankruptcy petitions on their behalf.  Barron testified that such payments were necessary to ensure that debtors remained active in their cases, and that the amounts were reasonable, given the substantial prepetition work Barron performed for his clients.  These prepetition payments were referred to as "deposits" in the retainer agreement.  A form retainer agreement between Barron and the debtor

---

[1]    The relevant facts were developed in a trial to the bankruptcy court and are largely undisputed.

set forth, inter alia, the type of bankruptcy sought, the total fees due, the amount of "initial deposit" owed, and the consequences of not filing. Under the retainer agreement, the client would forfeit the prepetition deposit to Barron if no bankruptcy petition was filed. Barron did not place the prepetition fees into a trust account but, rather, made the funds immediately available to himself and his firm for prepetition work related to and/or in contemplation of bankruptcy. He maintained neither a trust nor an IOLTA account because he considered the prepetition funds his property upon remittance. Barron took prepetition payments in all of the cases involved in this appeal.

Second, in sixty-four of the cases, Barron took additional payments from clients after their bankruptcy petitions had been filed. These payments ranged from thirty to five hundred dollars and reimbursed Barron for his efforts in contested proceedings in the clients' bankruptcy cases. Barron neither requested nor received bankruptcy court approval to accept these postpetition payments. He earned the remainder of his two thousand dollar standard fee subject to court scrutiny as part of the Chapter 13 confirmation process.

Appellee Janna Countryman, a Chapter 13 trustee, complained that Barron failed both to place prepetition fees in escrow pending court approval and to file a fee application for the extra postpetition fees. After holding a hearing on Countryman's consolidated motions, the bankruptcy court found that Barron

3

willfully and knowingly violated the Bankruptcy Code, the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"), the Local Bankruptcy Rules, and the Local Rules for the United States District Court for the Eastern District of Texas ("Local Rules"). Barron was ordered to disgorge all pre- and postpetition fees he received prior to plan confirmation in the one hundred sixty-seven cases.

On appeal, the district court affirmed the bankruptcy court's decision. Barron again appeals pursuant to 28 U.S.C. § 158(d).

## II. DISCUSSION

Barron principally asserts that the bankruptcy court erred in holding that his failure to place the clients' prepetition payments in escrow pending later court approval violated both Texas Disc. Rule 1.14(a) and Local Bankruptcy Rule 2016(b). He also challenges the holding that he violated Local Bankruptcy Rule 2016(e)(5), as well as various provisions of the Bankruptcy Code, in receiving postpetition payments from clients outside the Chapter 13 plans without proper notice and hearing.[2]

---

[2] Barron raised a number of other issues on appeal, two of which are waived because they were inadequately preserved: Barron did not seriously mount a Fifth Amendment takings challenge in the bankruptcy court to the disgorgement order, nor did he timely challenge the Local Bankruptcy Rules' nonconformity with national Bankruptcy Rule 9029. Ginther v. Ginther Trusts (In re Ginther Trusts), 238 F.3d 686, 689 (5th Cir. 2001) (citing Gilchrist v. Wescott, (In re Gilchrist), 891 F.2d 559, 561 (5th Cir. 1990)). The other issues need not be discussed in light of our conclusions above.

4

When this court reviews the decision of a district court based on a bankruptcy court decision under 28 U.S.C. § 158, findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. Crowell v. Theodore Bender Accounting, Inc. (In re Crowell), 138 F.3d 1031, 1033 (5th Cir. 1998).

## A. Prepetition Payments

Barron initially contends that Countryman lacked "standing" to challenge his fee arrangements with Chapter 13 debtors. This issue was addressed by the district court and is properly before the court here. Barron focuses his argument on 11 U.S.C. § 1302(b)(4), which prohibits the trustee in chapter 13 from advising the debtor on legal matters. However, he ignores the fact that "Congress has given the chapter 13 trustee a broad array of powers and duties." Matter of Maddox, 15 F.3d 1347, 1355 (5th Cir. 1994) (allowing a chapter 13 trustee to avoid a lien under 11 U.S.C. § 522(f)). The trustee in Chapter 13 exists to preserve the bankruptcy estate for creditors. To accomplish this goal, the trustee is given the power to review the compensation of attorneys and other officers, 11 U.S.C. §§ 329, 330, and to avoid certain fraudulent or postpetition transactions, 11 U.S.C. §§ 548, 549. Legal fees that are excessive or are alleged to have been improperly paid postpetition from the bankruptcy estate create an appearance of professional abuse and potentially deprive creditors

5

of funds.  The trustee may take action to challenge the propriety of such fees.  Although we ultimately reject some of the trustee's arguments, Countryman nevertheless had standing to challenge Barron's payment system.

In order to apply the various rules and statutes Barron has been found liable of violating, we must examine the status of the prepetition "deposits" received from his clients. Three possibilities arise.  Were the deposits Barron's exclusive property, as he maintains, or did Barron's clients maintain an interest in the deposits, or does the Bankruptcy Code authorize the courts to require trust accounts for all retainers irrespective of the ownership of the funds?  The bankruptcy and district courts rejected Barron's ownership contention and adopted both of the other alternatives.

The key to the bankruptcy court's reasoning is its "plain meaning" conclusion that all attorney retainers are alike for purposes of Local Bankruptcy Rule 2016(b).[3]  While Barron's prepetition "deposits" are properly construed as retainers, this determination standing alone means little.  The Local Bankruptcy Rule does not define the retainers to which it refers.  Moreover, nothing in the Bankruptcy Code compels the incorporation into the

---

[3]     The Local Rule, as written at the time this action was commenced, required that "[a] court authorized professional must deposit a retainer, whether received from the debtor or any other person for the benefit of the debtor, in a trust or IOLTA account.  The retainer must remain in the account until the Court enters an order allowing removal."

debtor's estate of all prepetition retainers,[4] nor do the uniform national Bankruptcy Rules make any pronouncement regarding the placement of retainers in attorney trust accounts.

Without doubt, the Bankruptcy Code seeks to protect both debtors and their estates from excessive or unnecessary legal fees. The Code requires court approval of all attorneys fees sought to be paid from the estate of the debtor. 11 U.S.C. §§ 330(a)(4)(B), § 331; In re Mayeaux, 269 B.R. 614, 626 & n.20 (Bankr. E.D. Tex. 2001); In re McDonald Bros. Const., Inc. 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990). Section 329 requires disclosure of the debtor's payments or agreements to pay bankruptcy attorneys within the year preceding bankruptcy, and it authorizes the court to review all attorney compensation and agreements for reasonableness, and to cancel excessive service agreements or order return of payments if they are excessive. While these provisions are potent, they are not limitless. Importantly, § 330 is not applicable to attorney fees derived from a source other than the debtor's estate. Mayeaux, 269 B.R. at 614, 626, n.20. Thus, the bankruptcy court could require a fee application for Barron's "deposits" under § 330 only if these prepetition payments remained within the debtor's estate. Additionally, for purposes of this case, § 329 is inapplicable because the trustee raises no issue of nondisclosure

---

[4] The debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1)(emphasis added). See also 11 U.S.C. § 1306(a)(1) and (2) (defining debtor's estate in Chapter 13 cases).

7

or unreasonableness of Barron's fees.  Barron took no more than the two thousand dollars allotted to him by local practice in the Eastern District of Texas Bankruptcy Court.  <u>See</u> Local Rule 2016(e) ("If a chapter 13 debtor's attorney requests $2000 or less for pre-petition and post-petition services and expenses incurred prior to confirmation, an application is not required."); <u>see also</u> <u>Mayeaux</u>, 269 B.R. at 626 n. 20.

Section 330 alone may apply to Barron's retainer, but only if the debtor maintained some ownership right in it after the filing of a bankruptcy case.  As the Supreme Court has made clear, state law ordinarily supplies the definition of property rights in bankruptcy.  <u>Butner v. U.S.</u>, 440 U.S. 48, 54, 99 S. Ct. 914, 917-18 (1979).  <u>Butner</u> applies to the interpretation of the property rights attributable to attorney retainer agreements as to other property governed by state law.

Retainer agreements fall into three general categories: (1) classic retainers; (2) security retainers; and (3) advance payment retainers.  <u>In re McDonald Bros.</u>, 114 B.R. at 996-98; <u>see also</u> 1 NORTON BANKR. L. & PRAC. 2d § 25:9 (2005).  A classic retainer involves fees paid as consideration for employment of counsel, as opposed to compensation for services rendered. <u>McDonald Bros.</u>, 114 B.R. at 998.  The classic retainer is earned in its entirety by counsel upon payment, and the debtor relinquishes all interest at remittance.  <u>Id.</u>  A classic retainer, paid prepetition, is outside the estate and the purview of § 330, though

8

it remains subject to disclosure and reasonableness review under § 329 of the Bankruptcy Code. A security retainer involves fees paid to counsel for prospective services. Id. at 999. The debtor retains an interest in the funds until services are actually rendered. Pending the rendition of services, the attorney merely "holds" the funds for the debtor. Id. Because the debtor retains an interest in these funds, they become property of the estate at filing subject to §§ 329 and 330. Id. at 1000-01. Finally, an advance payment or flat fee retainer involves fees paid as compensation for services to be rendered, but the payment passes entirely to counsel upon remittance, at which time the debtor relinquishes all interest. Id. at 1000, 1002. Funds collected as advance payment retainers do not become property of the bankruptcy estate at filing, and, as such, are subject to § 329 only. See Wootton v. Ravkind (In re Dixon), 143 B.R. 671, 677 (N.D. Tex. 1992) (internal citations omitted).

Barron's Retainer Agreement clearly lays out the prepetition services to be provided by his office and provides that a client will forfeit initial deposits to Barron if he does not make scheduled payments (on the deposit) or opts not to file a petition. Countryman contends that since Barron ultimately filed petitions on behalf of all these clients, the clients never forfeited the deposits and retained their interests in the prepetition payments. Such an argument presumes that the retainer agreements were security retainers for services to be rendered

9

postpetition. However, the record compels the conclusion that the prepetition payments in this case should be characterized as advance payment retainers for prepetition services. Barron testified without contradiction that his clients gave him prepetition deposits to secure his legal representation and to pay him for prepetition work. Barron also explained that his office performs the bulk of its services in ordinary Chapter 13 cases before the case is filed. These services include multiple conferences with the debtor; preparing the schedules; identifying and proposing solutions to typical problems involving mortgage arrearages, auto and insurance debts and taxes; and proposing a payment plan.

The trustee complains that Barron's retainer is suspect as compensation for prepetition work because he keeps no official time records. On the contrary, the trustee's argument is meritless. First, Barron testified without contradiction to the substantial prepetition services his office performs for clients in order to smooth their transition into Chapter 13 and develop realistic payment plans. Second, the trustee did not challenge the reasonableness of the overall fee, implying acquiescence in Barron's testimony. Third, the trustee is hoist by her own petard, viz., by her reliance on the Local Bankruptcy Rule's specific approval of Chapter 13 attorney fees of two thousand dollars or less without a formal fee application. Detailed record keeping is

10

either required or, in the Local Rule's commonsense approach to the practicalities of Chapter 13 representation, it is not.

Barron's characterization of the prepetition fees as "earned" immediately upon receipt is not controlling. See In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 574 (Bankr. N.D. Tex. 1986). The language of the Retainer Agreement and the undisputed operation of Barron's practice demonstrate, however, that the prepetition fees became Barron's property upon receipt in exchange for his prepetition work.[5]

Having determined that Barron's initial deposit bears the characteristics of an advance payment retainer, we must consider whether Barron's assuming control of the funds violated the Local Bankruptcy Rules. Pursuant to L.R. 2016(b), attorneys are required to place "a retainer . . . in a trust or IOLTA account," and "[t]he retainer must remain in the account until the court enters an order allowing removal." L.R. 2016(b). Texas case law on trust and IOLTA accounts is consistent with the plain statement of this local rule. As the bankruptcy court in Dixon stated:

> It has been the practice in Texas and elsewhere to require pre-petition <u>retainers taken for services to be rendered during the pendency of a bankruptcy case</u>, to be

---

[5]    It is worth noting that the practice of taking advance payment retainers is common in Chapter 11 bankruptcies. Countryman's broad interpretation of Local Bankruptcy Rule 2016(b) and of the trust requirement could have implications beyond this case. Attorneys for Chapter 11 filers are routinely paid "current" for prepetition work before the case is actually filed. Requiring firms to escrow debtors' advance payment retainers for work done in advance of the filing would create an enormous disincentive to competent Chapter 11 representation. Yet the protections of Section 329 remain an effective policing device for such payments.

11

held in trust . . . . Such retainer taken prior to the filing of bankruptcy becomes the property of the bankruptcy estate upon commencement of the bankruptcy case.

Dixon, 143 B.R. at 677 (citations omitted) (emphasis added). However, contrary to the bankruptcy court's conclusion that "the evidence is unequivocal that Barron ignored Texas [trust rules and case law]," R. at 90, the trust duty as pertains to earned prepetition fees is not settled in Texas. As the Dixon court also noted:

> Though Texas ethical opinions have not prohibited flat fees [a.k.a. advance payment retainers] as unethical per se, they have recommended that all client funds whose nature of ownership is subject to question be placed into a trust account and segregated from funds belonging entirely to the attorney.

Id. at 678 n.6 (emphasis added); see also Tex. Ethics Opinion 391 (discussing treatment of an advance payment retainer).

While it might have been prudent for Barron to place in escrow the prepetition payments he received, the Texas Rules do not require an advance payment retainer, earned by the attorney prepetition, to be placed in trust. Further, because the retainers at issue in this case were advance payments in nature, they became Barron's property upon remittance. As Barron's property, they were not subject to Local Bankruptcy Rule 2016. See In re Dixon, 143 B.R. at 677-78. There is no issue as to their unreasonableness or nondisclosure under 11 U.S.C. § 329, and the retainers are outside the reach of § 330, since they were not property of the bankruptcy

12

estate. The bankruptcy and district courts erred in ordering Barron to disgorge his prepetition retainers.

**B.    Postpetition Fees**

The bankruptcy court found that in accepting postpetition fees directly from clients, Barron violated Local Bankruptcy Rule 2016(e)(5). This rule states that any fees sought beyond an attorney's initial fee must be paid as an 11 U.S.C. § 503(b)(2) administrative expense. Barron plainly violated this rule in taking additional funds from debtors without disclosing such payments. Moreover, even in the absence of Local Rule 2016(e)(5), these postpetition payments would have been improper. As the court in Mayeaux correctly noted, "money paid to Debtor's counsel in the post-petition period constitutes estate property. It is elementary bankruptcy law that all post-petition earnings of a Chapter 13 debtor . . . constitute[] property of the bankruptcy estate." Mayeaux, 269 B.R. at 626. A "chapter 13 debtor . . . has no authority to transfer estate property to an attorney without proper notice [to the court]." Id. Pursuant to 11 U.S.C. § 549(a), the trustee may avoid a transfer of the estate's property unless the transfer is authorized by the bankruptcy court. Since Barron never requested permission from the court to receive these funds, he denied the court an opportunity to review the transfers. Accordingly, the bankruptcy court had a sound basis to order Barron to disgorge his undisclosed postpetition fees.

13

**CONCLUSION**

The bankruptcy court properly ordered Barron to disgorge his undisclosed postpetition fees but erred in ordering disgorgement of his prepetition retainers. We therefore **AFFIRM** the portion of the judgment concerning postpetition fees, **REVERSE** as to prepetition fees, and **REMAND** for further proceedings.

14