United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-30343

In the matter of: JAMES HENRY STANLEY; DOROTHY JEAN WICKER
STANLEY,

                                                    Debtor.

KATHLEEN SUGGS,

                                    Appellee-Cross-Appellant,

versus

JAMES HENRY STANLEY AND DOROTHY JEAN WICKER STANLEY,

                                    Appellants-Cross-Appellees.

Appeals from the United States District Court
for the Western District of Louisiana
(No. 5:04cv0059; No. 5:04cv0060)

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

   Debtors-Appellants-Cross-Appellees James Henry Stanley and
Dorothy Jean Wicker Stanley filed a petition for bankruptcy under
Chapter 13 of the United States Bankruptcy Code. Creditor-
Appellee-Cross-Appellant Kathleen Suggs, an unsecured creditor of
the Stanleys, objected to the confirmation of the Chapter 13 plan
and moved to convert it to one under Chapter 7, asserting that the

_____

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Stanley's did not file the petition in good faith, as required by 11 U.S.C. § 1325(a)(3). The bankruptcy court denied Suggs's motion after finding that the Stanleys had filed the petition in good faith. On appeal, however, the district court reversed, holding that the bankruptcy court clearly erred in finding good faith. The Stanleys appeal, asking us to reinstate the ruling of the bankruptcy court; Suggs cross-appeals, supporting the ruling of the district court but contending that the Stanleys' bankruptcy action should be dismissed rather than converted to a Chapter 7 proceeding. We reverse the ruling of the district court, affirm the ruling of the bankruptcy court, and remand for further proceedings in that court.

## I. FACTS & PROCEEDINGS

### A. The Judgment

Suggs was the long-time companion of Gilbert Wicker, a brother of Dorothy Stanley. In July 1999, Suggs found Wicker dead in his house in Little Rock, Arkansas. After a brief investigation, the Little Rock police department determined that the cause of death was suicide.[1] In the week following Wicker's death, Mrs. Stanley and her sister challenged the determination that the cause of Wicker's death was suicide, suggesting that Suggs may have played a role in his death. As a result, Suggs brought a diversity action against the decedent's sisters in the Eastern District of Arkansas, claiming that they had defamed her. The jury found in favor of

---

[1]    Suggs v. Stanley, 324 F.3d 672, 675-76 (8th Cir. 2003).

Suggs and awarded her $50,000 in damages.  The sisters appealed, and the Eighth Circuit affirmed with one dissent.[2]

**B.    The Bankruptcy Petition and Decision**

On April 15, 2003, the same day that the judgment against Mrs. Stanley became final and before Suggs could file her judgment in the public records and thus become a secured creditor, the Stanleys filed a petition for relief under Chapter 13 of the Bankruptcy Code.  The next month, Suggs filed an objection to the proposed wage earners' plan on the grounds that it was a "continuation of the malice of Dorothy Stanley against Kathleen Suggs."  Suggs asserted that the plan had not been proposed in good faith, so that confirmation should be denied pursuant to 11 U.S.C. § 1325(a)(3). Suggs also filed a motion to have the Stanleys' Chapter 13 case converted to one under Chapter 7.

Suggs asserted that the Stanleys' lack of good faith was evident from: (1) an earlier filing of a Chapter 7 petition; (2) the timing of the filing of the petition; (3) their attempt to discharge a debt that, according to Suggs, would not be dischargeable in a Chapter 7 bankruptcy, because it arose from a willful or malicious injury; (4) the Stanleys' alleged determination not to pay the debt; (5) Mrs. Stanley's voluntarily quitting her job the month following the entry of the judgment in the district court in Arkansas; (6) the original plan's provision for repayment into a retirement account; (7) the Stanleys' failure

---

[2]     Id. at 676-77, 682.

to comply with Suggs's requests for documents; (8) false or undisclosed information on a loan application filed by the Stanleys two months before the bankruptcy filing; (9) the denuding of the Stanleys' home equity by obtaining a mortgage loan; and (10) the plan's preferential treatment of some of the Stanleys' unsecured creditors over Suggs.

After conducting a hearing, the bankruptcy court confirmed the plan and denied Suggs's motion to convert, finding that the plan had been proposed in good faith.  In reaching its conclusion of good faith, the bankruptcy court addressed each of Suggs's proffered indicia of a lack of good faith, rejecting each in turn with reasons.  In sum, the bankruptcy court held that the Stanleys filed their petition because "they had no place else they could go and continue to live, pay their bills, and . . . support their dependents."  The bankruptcy court entered an order overruling Suggs's objection and denying the motion to convert, which Suggs timely appealed to the district court.  Following entry of this order, the bankruptcy court allowed modification of the Stanleys' plan, and Suggs objected to the modified plan for substantially the same reasons that she had objected to the original plan.  The modified plan was confirmed on December 2, 2003.  Suggs again timely appealed to the district court.

The district court consolidated the appeals, eventually reversing the bankruptcy court.  The district court concluded that the bankruptcy court had failed to consider the totality of

circumstances and remanded the matter to the bankruptcy court for further proceedings. The Stanleys appeal the district court's ruling. Suggs cross-appeals, asserting that the Stanleys' bankruptcy petition should be dismissed rather than converted to a Chapter 7 proceeding.

## II.  ANALYSIS

### A.  Standard of Review

In reviewing cases originating in bankruptcy, "we perform the same function as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed <u>de</u> <u>novo</u>."[3]  Whether a petition was filed in good faith is a question of fact that we review for clear error.[4]  "When a finding of fact is premised on an improper legal standard, or a proper one improperly applied," however, that finding is reviewed <u>de</u> <u>novo</u>.[5]

### B.  Good Faith

---

[3]  <u>Nationwide Mut. Ins. Co. v. Berryman Prods.</u> (<u>In re Berryman</u>), 159 F.3d 941, 943 (5th Cir. 1998).

[4]  <u>In re Elmwood Dev. Co.</u>, 964 F.2d 508, 510 (5th Cir. 1992) (chapter 11 petition); <u>see</u> <u>also</u> <u>In re Love</u>, 957 F.2d 1350, 1356 (7th Cir. 1992) (chapter 13 petition).  "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." <u>In re Missionary Baptist Found. of Am.</u>, 712 F.2d 206, 209 (5th Cir. 1983)) (internal quotation marks omitted).

[5]  <u>In re Missionary Baptist Found. of Am.</u>, 712 F.2d at 209; <u>see</u> <u>also</u> <u>In re Mercer</u>, 246 F.3d 391, 402 (5th Cir. 2001) ("[T]he clear error standard does <u>not</u> apply to findings of fact resulting from application of an incorrect legal standard.").

Section 1325(a)(3) of the Bankruptcy Code states that the "court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law."[6] "The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws."[7] In proceedings to confirm a plan, the debtor has the burden of proving good faith[8]; in proceedings to convert or dismiss for lack of good faith, the creditor has the burden of showing that the debtor lacks good faith.[9]

To determine whether a Chapter 13 plan was filed in good faith, the bankruptcy court applies a "totality of the circumstances" test.[10] Under this test, the court considers such factors as (1) "the reasonableness of the proposed repayment plan,"[11] (2) "whether the plan shows an attempt to abuse the spirit of the bankruptcy code,"[12] (3) whether the debtor genuinely intends

---

[6]     11 U.S.C. § 1325(a)(3).

[7]     In re Elmwood Dev. Co., 964 F.2d at 510.

[8]     See Hardin v. Caldwell, 895 F.2d 1123, 1126 (6th Cir. 1990) (In re Caldwell).

[9]     See In re Love, 957 F.2d at 1355-56.

[10]     E.g., In re Chaffin, 816 F.2d 1070, 1073 (5th Cir. 1987) ("Chaffin I"), modified, In re Chaffin, 836 F.2d 215, 216-17 (5th Cir. 1988) ("Chaffin II").

[11]     Id.

[12]     Id.

to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan.[13] In applying this test, the bankruptcy court "exacts an examination of all of the facts in order to determine the bona fides of the debtor."[14]

If the bankruptcy court determines that a Chapter 13 plan has not been filed in good faith, it may deny confirmation.[15] Furthermore, at the request of an interested party, the court may convert a Chapter 13 case not filed in good faith to one under Chapter 7 or dismiss the case in its entirety, "whichever is in the best interests of creditors and the estate."[16]

---

[13]     Chaffin II, 836 F.2d at 216-17, modifying Chaffin I, 816 F.2d 1070.

[14]     Chaffin I, 816 F.2d at 1074.

[15]     Section 1325(a)(3) of the Bankruptcy Code states that "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

[16]     Section 1307(c)(5) provides that:

on request of a party in interest . . . and after notice and a hearing, the court may convert a case under  . . . [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including . . . denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.

## C.  Application

Before determining whether the bankruptcy court applied the totality-of-the-circumstances test and, if so, whether the court applied it correctly, we must first identify the standard of review that applies, i.e., de novo or clear error.  Suggs insists that, despite the general rule that, being factual, findings of good faith are reviewed for clear error,[17] de novo review should be applied in this instance, because, she contends, the bankruptcy court did not properly apply the totality-of-the-circumstances test.  The district court agreed with Suggs, holding that the bankruptcy court had not considered the totality of the circumstances.  In so holding, that court concluded that the bankruptcy court had failed to give adequate weight to various indicia of bad faith.  Specifically, the district court focused on the timing of the filing of the petition and the possibility that the debt would be non-dischargeable under Chapter 7.

We disagree with the district court's ruling and conclude that the bankruptcy court applied the totality-of-the-circumstances test

11 U.S.C. § 1307(c)(5).  Although not explicitly enumerated as a reason for dismissal or conversion, "[m]ost courts have held that lack of good faith can be cause for dismissal or conversion of a chapter 13 plan."  8 COLLIER ON BANKRUPTCY § 1307.04[10] at 1307-21 (15th ed. revised 1996) (collecting cases).

[17]    In re Elmwood Dev. Co., 964 F.2d at 510; In re Missionary Baptist Found. of Am., 712 F.2d at 209 ("A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.") (internal quotation marks omitted).

and did so properly.  The bankruptcy court analyzed each of the most relevant indicia of bad faith, rejecting each in turn for reasons that are not clearly erroneous.  It ultimately concluded that

> [t]he indicia that [Suggs's counsel] argues of bad faith, there is a lot of smoke.  [Suggs's counsel] was not improper or wrong in pursuing this matter.  He did have something to shake and pop on each one of these items. It's just that when you shake and pop and clear the smoke, there's no real fire.

The Stanleys filed their petition, ruled the court, because "they had no place else they could go and continue to live, pay their bills, and . . . support their dependents."

It is true that the bankruptcy court did not explicitly state that it was considering the individual circumstances cumulatively, but the Supreme Court has instructed that a court is not required to make "a formulary statement" that it considered the relevant facts "individually and cumulatively" in applying the totality-of-the-circumstances test.[18]  Rather, "[i]t suffices that that was the fair import of the [lower court's] opinion."[19]  Here, "the fair import" of the bankruptcy court's analysis is that it considered each indicium and considered them all in toto.  We therefore review the bankruptcy court's determination that the Stanleys acted in good faith for clear error.  "As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous.  If the bankruptcy

---

[18]     Early v. Packer, 537 U.S. 3, 9 (2002) (per curiam)

[19]     Id.

court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it."[20]

After reviewing the briefs and the record, and hearing oral argument by able counsel for the parties, we conclude that the bankruptcy court's determination that the Stanleys acted in good faith was not clearly erroneous. First, that court's determination that the timing of the petition and the prior bankruptcy filing did not indicate bad faith is plausible. Although these factors are relevant, they are not per se evidence of a lack of good faith, and we cannot say that the bankruptcy court clearly erred in discounting them.

Second, the bankruptcy court did not clearly err in declining to consider whether the Stanleys' debt to Suggs would be non-dischargeable as a "willful and malicious injury" under Section 523(a)(6) of Chapter 7.[21] Contrary to Suggs's contention, Arkansas law does not appear to require a finding that Mrs. Stanley acted maliciously within our interpretation of Section 523(a)(6). We have held that the "test for willful and malicious injury under Section 523(a)(6) . . . is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the

---

[20] In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005) (internal citation omitted).

[21] Chapter 7 states that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is non-dischargeable. 11 U.S.C. § 523(a)(6).

debtor."[22]  In this case, a verdict against Mrs. Stanley could have been supported by a finding that she acted with reckless disregard for the consequences of her act, a finding that would place the actions outside the scope of Section 523(a)(6).  More importantly, even if the debt were non-dischargeable under Chapter 7, this is only one of many factors to be considered in the totality of the circumstances.  Alone, it does not demand a finding of a lack of good faith.

Third, the bankruptcy court considered and rejected the remaining asserted signals of bad faith — for example, Mrs. Stanley's decision to stop working, the discovery disputes, a loan application containing incorrect information, and the Stanleys' stripping of equity from their home — because the court accepted the justifications that the Stanleys offered for these actions during their testimony.  These determinations are, after all, based largely on the trial court's credibility calls, to which we (and the district court sitting as an appellate court) owe considerable deference.  We decline to call them clearly erroneous and therefore decline to disturb them.

Finally, Suggs's repeated assertion that the Stanleys' motive of spite somehow warrants a finding of bad faith fails.  Even if we assume arguendo that the Stanleys did act with spite and malice, this would not mean that they are automatically not entitled to the protection of the Bankruptcy Code: One may be an honest debtor even

---

[22]    In re Williams, 337 F.3d 504, 509 (5th Cir. 2003).

if his past dealings with his creditor have been dishonest.  The debt in <u>Chaffin I</u> and <u>Chaffin II</u>, for example, stemmed from the debtor's conviction for securities fraud and theft.[23]

Inasmuch as "the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole,"[24] we reverse the appellate ruling of the district court and affirm the original good faith ruling of the bankruptcy court.

## III. CONCLUSION

The bankruptcy court applied the totality of the circumstances test and did so properly.  Its conclusion that the Stanleys acted in good faith is not clearly erroneous.  Accordingly, we REVERSE the appellate ruling of the district court and AFFIRM the rulings of the bankruptcy court that Suggs appealed.  As we have concluded that the bankruptcy court's decisions were not error, we deny Suggs's request that the bankruptcy petition be dismissed, and we REMAND this case to the bankruptcy court for further proceedings consistent with its affirmed ruling.

---

[23]     <u>Chaffin I</u>, 816 F.2d at 1071.

[24]     <u>In re Acosta</u>, 406 F.3d at 372.