# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50177

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2020

Lyle W. Cayce
Clerk

In the Matter of:  FREDDIE LEE BROWN,

>   Debtor

FREDDIE LEE BROWN, also known as Freddie L. Brown,

>   Appellant

v.

MARY K. VIEGELAHN, Chapter 13 Trustee,

>   Appellee

Appeal from the United States Bankruptcy Court
for the Western District of Texas

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A debtor filed for bankruptcy under Chapter 13.  When the debtor sought to confirm his plan, the trustee objected.  The court would confirm the plan only if the debtor chose one of two non-statutory conditions that the court would then impose.  Finding both conditions undesirable but not wanting his case dismissed, the debtor agreed to one of the conditions and then appealed to the district court.  The district court *sua sponte* certified the appeal to this court, and we accepted it.  We VACATE the confirmation order and REMAND for further proceedings.

No. 19-50177

## FACTUAL AND PROCEDURAL BACKGROUND

Freddie Lee Brown filed for Chapter 13 bankruptcy in October of 2017 in the Bankruptcy Court for the Western District of Texas. Chapter 13 allows an individual to file for bankruptcy and "obtain a discharge of his debts if he pays a portion of his monthly income in accordance with a court-approved plan," without liquidating his assets. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011). Brown filed his Chapter 13 plan, outlining a five-year payment plan, which included monthly payments of $1,080, to pay in full his secured creditors, and which included a promise to pay "approximately 100%" of the claims of his unsecured creditors. The total of unsecured creditors' claims was listed as $7,728.18.

Chapter 13 Trustee Mary K. Viegelahn objected to Brown's plan on November 21, 2017. She cited as the basis for her objection: (1) the debtor's income was overstated on Schedule I; (2) the plan was not feasible under 11 U.S.C. § 1325(a)(6) because the debtor might not be able to make his payments under the plan given that the debtor was behind on his post-petition mortgage payments; and (3) the debtor had not included the income he received from the Department of Veterans Affairs on Schedule I or Schedule B. The trustee requested the court dismiss the case and find that the plan failed to meet the standards in 11 U.S.C. § 1325(a).

The trustee insisted that the debtor's failure to disclose some income was a violation of the requirement of good faith found in Section 1325(a)(3), although she acknowledged that this inaccuracy was later corrected by amendment. The trustee also objected based on Section 1325(a)(1), which requires the plan to comply with all other applicable provisions of the Bankruptcy Code. If the court nonetheless decided to confirm the plan, the trustee urged the court to impose certain conditions.

No. 19-50177

After Brown amended the schedules that had misstated his income and failed to include his veterans benefits, his disposable monthly income — that is, his income minus reasonably necessary expenses — was calculated to be $2,191, as shown on Schedule J. Because his monthly payments under his proposed Chapter 13 plan would be $1,080, that would leave $1,111 of excess disposable income in Brown's hands after all monthly payments had been made.

In early 2018, the bankruptcy court held two confirmation hearings at which the trustee continued to object. The trustee proposed multiple conditions to address these objections. At the second hearing, the court told the parties that it would confirm the plan but only if it imposed one of two conditions. The judge let counsel confer with the debtor before choosing an option.

The first option would require the debtor to agree to divert all his disposable income for the first seven months to pay the unsecured creditors. After that time, he would begin paying a lesser amount. The debtor also would maintain all his plan-modification rights under 11 U.S.C. § 1329.

The second option would incorporate into the confirmation order what is known as the *Molina* language, as follows:

> The plan as currently proposed pays a 100% dividend to unsecured claims. The Debtors shall not seek modification of this Plan unless said modification also pays a 100% dividend to unsecured claims. Additionally, should this Plan ever fail to pay a 100% dividend to unsecured claims the Debtors will modify the Plan to continue paying a 100% dividend. If the Plan fails to pay all allowed claims in full, the Debtors will not receive a discharge in this case.

*Molina v. Langehennig*, No. SA-14-CA-926, 2015 WL 8494012, at *1 (W.D. Tex. Dec. 10, 2015). Under this provision, Brown would not have to pay all his disposable income into the plan, but his future ability to modify the plan would be limited.

No. 19-50177

Brown chose the *Molina* language.  On March 12, 2018, the bankruptcy court entered its order confirming the Chapter 13 plan and adopting the *Molina* language.  Although the court added the language, the court did not grant the trustee's objections or make any findings on whether the plan failed to meet the statutory requirements.  Instead, the order simply recited that the "hearing having been held pursuant to 11 U.S.C. § 1324, no timely objection to confirmation having been filed, the trustee having recommended confirmation," the plan as filed was confirmed with the described modifications.  Brown requested that the bankruptcy court issue a certification for the appeal to be taken directly to the Fifth Circuit, but the bankruptcy court denied the request.

Brown appealed the confirmation order to the district court.  After the parties fully briefed the case, the court *sua sponte* certified the appeal here.  The district court concluded that certification was appropriate because the issue — namely, whether a bankruptcy court may impose the *Molina* language on a Chapter 13 plan that complies with 11 U.S.C. § 1325 — was purely legal and no binding Fifth Circuit or Supreme Court precedent existed.  Also relevant was that district courts in the Fifth Circuit had approached inclusion of such a condition in different ways.  Finally, the district court found that the issue would continue to arise in bankruptcy courts, making certification a desirable means to advance resolution.  28 U.S.C. § 158(d).  We later approved Brown's appealing here prior to a district court judgment.

## DISCUSSION

We review a bankruptcy court's factual findings for clear error and its conclusions of law *de novo*.  *Kennard v. MBank Waco, N.A.*, 970 F.2d 1455, 1457–58 (5th Cir. 1992).  Mixed questions of law and fact are also reviewed *de novo*.  *Bass v. Denney*, 171 F.3d 1016, 1021 (5th Cir. 1999).  The United States

No. 19-50177

Bankruptcy Code[1] instructs that "[t]he debtor shall file a plan" in a Chapter 13 bankruptcy. § 1321. When a Chapter 13 "plan complies with the provisions of this chapter and with the other applicable provisions of this title," the bankruptcy court "shall confirm" the plan "[e]xcept as provided in subsection (b)." § 1325(a). "Shall" is a mandatory word indicating a command. *See Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 487 (5th Cir. 1982) (confirmation of compliant plans is obligatory).

There is an exception to that command, which states that upon a trustee's objection, "the court may not approve the plan unless, as of the effective date of the plan—

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

§ 1325(b)(1).

Confirmation is a signal event under Chapter 13. It effectuates the plan and leads to "a discharge of the debts listed in the plan if the debtor completes the payments the plan requires." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010) (citing §§ 1324, 1325, and 1328). Later modification of payments under the plan can be sought. "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to" increase or reduce the amount of payments. § 1329(a). Plan modifications still must comply with Section 1325(a). § 1329(b)(1). When

---

[1] Unless otherwise indicated, all references to the "Code" and all statutory citations are to the Bankruptcy Code, Title 11 of the U.S. Code.

a debtor has made all his payments under a plan, he can receive a discharge. § 1328.

Also relevant to our analysis of this special provision is that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). Further, the Code should not be construed to prevent the court from "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.* Although Section 105 provides the courts with powers in equity, those powers cannot "override explicit mandates" of the Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014). This is because a court cannot "carry out" the Code while simultaneously violating it. *Id.*

We will consider Brown's argument that the imposed *Molina* condition violated Sections 1325 and 1329. Also before us are the trustee's arguments that the bankruptcy court properly imposed the condition and that Brown's Chapter 13 plan did not satisfy the requirements of Section 1325.

I.     *Section 1325*

A.     *Whether the plan complied with Section 1325(a)*

According to the trustee, this court does not need to answer the new question of whether a bankruptcy court may impose non-statutory conditions when a plan satisfies Section 1325(a) and (b). Instead, the trustee argues that Brown's plan did not comply with the requirements of Section 1325(a). Thus, the bankruptcy court would not be subject to Section 1325(a)'s mandatory language about confirming the plan, and the court would be within its authority to confirm the plan only with the *Molina* language. Specifically, the trustee argues that Brown's Chapter 13 plan was defective under Section 1325(a)(1), (3), (6), and (7). We will examine those arguments.

No. 19-50177

Section 1325(a)(1) requires that a plan comply with "other applicable provisions" of the Code beyond Chapter 13. The trustee argues that Brown's plan failed to comply with provisions applicable to the trustee's duties, specifically, Sections 1302 and 704. Section 1302 imposes the duties on a Chapter 13 trustee and incorporates by reference most of the duties listed in Section 704. § 1302(b)(1). One of those duties is that the trustee "be accountable for all property received." § 704(a)(2). Here, the trustee argues she had a duty under the Bankruptcy Code to preserve the estate and the added condition in the plan better allowed her to fulfill that duty.

"The trustee in Chapter 13 exists to preserve the bankruptcy estate for creditors." *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005). The trustee has specific statutory grants of responsibility and power to achieve her goals. *Id.* A trustee's general duty to preserve the estate does not override specific provisions of the Code. Several Code provisions support that the trustee's estate-preservation duty is not implicated here. First, the trustee is "accountable for all property *received*." § 704(a)(2) (emphasis added). Brown's excess disposable income, though, is not property that the trustee received, so the trustee cannot have a statutory duty to preserve it. Further, Section 1325(b)(1) is disjunctive and does not require a debtor to pay all his disposable income into his plan. § 1325(b)(1)(A). Similarly, Section 1322 requires that a Chapter 13 plan "provide for the submission of all or such *portion* of future earnings or other future income of the debtor to the supervision and control for the trustee *as is necessary* for the execution of the plan." § 1322(a)(1) (emphases added). Because Brown's plan proposed to pay creditors in full but also allowed him to maintain some disposable income each month, turning over his excess disposable income was not necessary to execute the plan. Whatever a trustee's duty to preserve the estate, it is not that a trustee must control a Chapter 13 debtor's excess disposable income.

7

No. 19-50177

The trustee also argues that Brown did not act in good faith as required by the Code. § 1325(a)(3), (7). The crux of the trustee's argument is that Brown acted in bad faith because his proposed plan makes "creditors bear the risk of default should there be a future change in the Debtor's circumstances." According to the trustee, Brown is seeking to "manipulate the Code" by maintaining over $1,000 of excess monthly disposable income while the overall debt to unsecured creditors is just over $7,000. The trustee also identifies Brown's initial failure to disclose his veterans benefits as income as evidence of bad faith.

Relying on a nonprecedential opinion, the trustee argues that the bankruptcy court was not required to state that it had considered all the factors in making a good-faith finding under Section 1325(a). *Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 347 (5th Cir. 2007). In *Stanley*, though, the bankruptcy court had made a finding of good faith. *Id.* It is true that the *Stanley* bankruptcy court did not explicitly state that it considered all the facts cumulatively, but that court had considered each indicator of bad faith raised by the trustee. *Id.* We therefore concluded that the "fair import" of the *Stanley* court's analysis was that it properly evaluated the totality of the circumstances surrounding good faith. *Id.* As a result, we upheld the bankruptcy court's finding. *Id.* at 347–49.

We usually review a bankruptcy court's finding of good faith for clear error, *Sikes v. Crager (In re Crager)*, 691 F.3d 671, 675–76 (5th Cir. 2012), but we apply *de novo* review when good-faith findings are based on incorrect law, *In re Elmwood Development Co.*, 964 F.2d 508, 510 (5th Cir. 1992). Here, though, there were no findings on the Section 1325(a) requirements whatsoever. Even when the bankruptcy court summarized the proceedings, the bankruptcy court did not mention anything about good or bad faith. We are therefore unable to say, as we did in *Stanley*, that it was the "fair import"

8

of the bankruptcy court's analysis that it properly analyzed the good-faith factors at all, much less cumulatively.  Moreover, to the extent that the bankruptcy court made a finding of bad faith, it was based on incorrect law. We observe the sensible rule that "debtors are not in bad faith merely for doing what the Code permits them to do." *Beaulieu v. Ragos*, 700 F.3d 220, 227 (5th Cir. 2012).  We thus reject the trustee's view that maintaining excess disposable income is inherently bad faith and manipulation of the Code.

In addition, the trustee argues that the plan was not feasible because Brown would not be able to comply with its terms.  § 1325(a)(6); *Foster*, 670 F.2d at 486.  In determining whether a plan is feasible, among relevant factors is "the degree of responsibility of the debtor, as evidenced by his past dealings with his creditors, and the reasons contributing to the debtor's need for a Chapter 13 plan may be significant."  *Foster*, 670 F.2d at 487.  We also explained that "the bankruptcy court, in deciding whether to confirm the plan, *must determine* whether the debtor will be able to make those payments and to comply with the plan."  *Id.* at 486 (emphasis added).  Here, the bankruptcy court made no finding on feasibility.

Unless Brown's plan fell short of the Section 1325(a) criteria, the court was required to confirm the plan, subject to subsection Section 1325(b).  *See Foster*, 670 F.2d at 487.  We have analyzed the claimed shortcomings under Section 1325(a) and rejected them.  To conclude, we next consider *de novo* whether Brown's plan complied with Section 1325(b)(1).

### B.    *Whether the plan complied with Section 1325(b)(1)*

When a trustee objects to confirmation of a Chapter 13 plan, the bankruptcy court may not confirm the plan unless (A) the full value of the claim is to be paid under the plan, or (B) the plan provides that all the debtor's disposable income will go toward payments.  § 1325(b)(1)(A)–(B).  The trustee

argues that the statute does not give a choice between the two ways of complying with Section 1325(b)(1). Instead, subsection (B) sets the minimum payment for debtors whose income is above the applicable state's median, as calculated under Section 1325(b)(3).

Specifically, the trustee argues that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23, amended the Code so that an above-median debtor's *minimum* payment for a Chapter 13 plan is his monthly disposable income, under subsection (b)(1)(B). The trustee cites Federal Rule of Bankruptcy Procedure 1007, which states that Chapter 13 debtors must file statements of monthly incomes and calculate their disposable income. FED. R. BANKR. P. 1007(b)(6). She also emphasizes that BAPCPA was passed "to promote the rights of creditors."

The trustee's interpretation of Section 1325(b)(1) runs counter to the plain text, which is where we begin and end. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Section 1325(b)(1) contains two disjunctive elements. If a trustee objects to confirmation of a Chapter 13 plan, the bankruptcy "court may not approve the plan unless" the debtor complies with option (A) "or" option (B). § 1325(b)(1). Generally, "*or* creates alternatives." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116 (2012). Subsection (b)(1) is not ambiguous textually. The trustee's interpretation works only if "or" is completely read out of the subsection. We conclude a debtor does not need to comply with both subsection (b)(1)(A) and (b)(1)(B). § 1325(b)(1)(A)–(B).

Next, we consider whether Brown's plan complied with Section 1325(b)(1)(A). The trustee argues that, even if subsection (b)(1)(B) does not establish the minimum payment, Brown's plan still did not satisfy subsection (b)(1)(A). Brown proposed paying unsecured creditors "approximately 100% of allowed claims." The trustee expresses skepticism at

the word "approximate," noting that the "Debtor's plan did not guarantee payment in full. By its own terms, it only proposed to pay an approximate 100%." Brown informs us, though, and the trustee does not dispute, that "approximate" comes from a mandatory standing order of this particular Bankruptcy Court.

The option provided in subsection (b)(1)(A) states that "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim," as of the effective date of the plan. § 1325(b)(1)(A). The plan would pay unsecured creditors "approximately 100%," which is as close to "in full" as the standing order allows a plan to state. The plan did not propose to pay "less than the amount of such claim." Thus, the plan complied with subsection (b)(1)(A), and the bankruptcy court was not prohibited by that section from confirming the plan. § 1325(b)(1).

### C.     *Whether the imposed condition violates Section 1325*

We now consider whether imposing the *Molina* language violated Section 1325(a) and (b). Brown starts with the premise that his Chapter 13 plan complied with Section 1325(a). Brown argues that because Section 1325(a) lists specific criteria that a Chapter 13 plan must meet, the court did not have discretion to add additional conditions. According to Brown, this lack of discretion is implied by the mandatory nature of the word "shall" and by the negative-implication canon of *expressio unius est exclusio alterius. See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017).

Section 1325(a) mandates the confirmation of compliant Chapter 13 plans, but it does not address what a bankruptcy court may include in its confirmation order. The caselaw demonstrates differences of opinion among courts. *Compare Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002) (disagreeing with the conclusion that a court can require a Chapter 13 plan

compliant with 1325(a) to meet additional requirements), *with Martinez v. Viegelahn*, 581 B.R. 486, 494 (W.D. Tex. 2017) (Section 1325 does not prohibit judicially imposed conditions), *and In re Walker*, 165 B.R. 994, 1000 (E.D. Va. 1994) (bankruptcy court has power to impose conditions under Section 105). What we do know is that Section 105(a) speaks in quite broad terms of a bankruptcy court's authority, but it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (footnote omitted). The bankruptcy court did not link the imposition of the *Molina* language with furthering another Code provision, and indeed, our understanding of the trustee's arguments is that she is relying on equity to support the provision.

The transcript of the hearing on the plan supports that the bankruptcy court would not have confirmed the plan without an extra condition. Between two undesirable options,[2] the debtor chose the *Molina* language. That language restricted modification. The restrictions are these: (1) any modification had to pay "a 100% dividend to unsecured claims," (2) the debtor had to modify the plan should he "fail to pay a 100% dividend to unsecured claims," and (3) there would be no discharge unless all allowed claims were paid in full.

We will not make any broad rulings here about whether a bankruptcy court may impose conditions on a compliant Chapter 13 plan. Nor will we now adopt the debtor's blanket rule that satisfying the Section 1325(a) criteria

---

[2] Brown argues that the alternative condition he did not accept, which would have required him to pay all his disposable income for the first seven months of the plan, would have made superfluous the requirement that "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim." § 1325(b)(1)(A). The confirmation order, though, did not force Brown to proceed under subsection (b)(1)(B). We will not analyze the proposed condition that is not before us.

always precludes court-imposed conditions on a bankruptcy plan. Nevertheless, the *Molina* provision arguably contravened Section 105(a) by its failure to further some other provision of the Code. We are reluctant to so hold, though, because the bankruptcy court did not articulate or analyze whether some provision of the Code was being upheld by the *Molina* provision. We do hold that, at a minimum, the provision was not "necessary or appropriate to carry out" any part of the Code identified in this appeal.

Instead of basing our holding on a potential violation of Section 1325(a), though, we consider ourselves on firmer footing to resolve the case on the following analysis concerning Section 1329.

## II.   *Section 1329*

Brown argues that the *Molina* language violates Section 1329 of the Code by limiting the debtor's ability to modify the plan. Section 1329(a) provides: "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to" adjust payments, schedules, or the distribution of those payments to different creditors. § 1329(a)(1)–(4).

Brown relies on the district court's reasoning in *Martinez.* 581 B.R. 486. *Martinez* was another Chapter 13 case in which a district court reviewed a plan confirmed by the bankruptcy court. The bankruptcy court had added the *Molina* language, and the district court had to decide whether that violated Section 1329. 581 B.R. at 491. *Martinez* found that, despite bankruptcy courts' broad equitable powers under Section 105, the *Molina* language contravened Section 1329. *Id.* at 493–97. The court explained: "The purpose of Section 1329 is to allow modification of a confirmed plan should circumstances change during the life of the plan." *Id.* at 495. Although the court recognized that a

No. 19-50177

trustee has some competing duties to protect the unsecured creditors, the court observed that the solution was simple: "Should Debtors later seek modification of their Chapter 13 Plan Order under Section 1329, Debtors will still have to meet all of the requirements listed under Section 1325(a), including the requirement of good faith." *Id.* at 497. The court vacated the conditional *Molina* language and affirmed the remainder of the confirmation order. *Id.* at 499.

According to the trustee, though, Brown still may seek modification under the *Molina* language. The trustee argues that *Martinez* got it wrong because it "misunderstood the impact of the *Molina* language on the debtors." This argument is different than what the trustee argued to the bankruptcy court. At the confirmation hearings, she acknowledged that the *Molina* language allows a debtor to modify his plan but "not to amend to pay less than 100 percent." In her appellate briefing, however, the trustee argues that under the *Molina* language, "debtors were not prohibited from modifying the plan to pay less than 100%. . . . The debtors were only required to pay 100% to obtain a discharge. A discharge is merely a privilege and not a right."

The *Molina* language states: "The Debtor(s) shall not seek modification of the Plan unless said modification also pays a 100% dividend to unsecured claims." Consequently, any future modifications cannot downwardly adjust the amount to be paid to unsecured creditors. Even the bankruptcy court seemed to recognize that this condition limited Brown's rights under Section 1329. When giving a choice between the two conditions, the court stated to debtor's counsel: "I understand your argument about 1329, that's why I'm giving you the difficult, admittedly, choice. If you're concerned about *preserving* 1329, I'm going to balance it against paying the unsecured claims." (emphasis added).

14

No. 19-50177

We are persuaded by the *Martinez* court's reasoning that the *Molina* language violates Section 1329. Further, if the trustee is correct in her appellate briefing that Brown may modify the plan to pay less, but that the *Molina* language would still preclude him from receiving discharge, then the condition violates Section 1328. Under Section 1328(a), a debtor who has made "all payments under the plan" may receive discharge of certain debts. § 1328(a). Under the trustee's interpretation of the *Molina* language, a debtor could modify the plan to pay less than 100% to unsecured creditors, but a debtor who did so would not be able to receive discharge, despite making "all payments under the plan," § 1328(a). The *Molina* language is better read, though, as limiting a debtor's ability to request certain modifications.

Although we hold today that conditions prohibiting certain modifications of Chapter 13 plans violate Section 1329, we note that this dispute seems in some ways much ado about nothing. Modifications of Chapter 13 plans must meet the same standards as a plan when first proposed. § 1329(b)(1). If, post-confirmation, a debtor in bad faith requests a modification of the plan, it is within the bankruptcy court's discretion to deny that request. Still, a bankruptcy court should not limit Section 1329's availability based on speculation about an as-of-yet non-existent request to modify a Chapter 13 plan.

We VACATE the confirmation order and REMAND to the bankruptcy court for proceedings consistent with this opinion.

15